PEOPLE v HERRON

Docket No. 309320. Submitted October 1, 2013, at Marquette. Decided
        December 12, 2013, at 9:00 a.m. Leave to appeal sought.
    A Menominee Circuit Court jury convicted Paul A. Herron of
        breaking and entering a building with intent to commit a larceny,
        MCL 750.110, and possession of burglary tools, MCL 750.116. The
        court, Richard J. Celello, J., sentenced defendant to a prison term
        of 6 years and 4 months to 20 years. Defendant appealed, alleging
        ineffective assistance of counsel. He also filed a motion to remand,
        which the Court of Appeals granted. Following an evidentiary
        hearing, the trial court denied defendant's motion for a new trial.
        The Court of Appeals *held*:
        1. Defendant claimed that he did not have the necessary intent
    to commit a larceny and that the break-in was a cry for help so he
    could be arrested and receive assistance for his mental health
    problems. Defendant argued that defense counsel's failure to
    investigate and call witnesses who would have corroborated defen-
    dant's claim that he did not intend to commit larceny when he
    broke into the building deprived him of his right under the Sixth
    Amendment and Const 1963, art 1, § 20 to effective assistance of
    counsel. To establish that defense counsel did not render effective
    assistance and therefore that the defendant is entitled to a new
    trial, he or she must show that (1) counsel's performance fell below
    an objective standard of reasonableness and (2) but for counsel's
    deficient performance, there was a reasonable probability that the
    outcome would have been different. Effective assistance of counsel
    is presumed, and the defendant bears a heavy burden of proving
    otherwise. With respect to whether defense counsel's performance
    fell below an objective standard of reasonableness, counsel is given
    wide discretion to decide questions of trial strategy. Whether to call
    witnesses is presumed to be a matter of trial strategy, and strategic
    choices made after less than complete investigation are reasonable
    precisely to the extent that reasonable professional judgments
    support the limitations on investigation. The failure to adequately
    investigate is ineffective assistance of counsel if it undermines
    confidence in the trial's outcome. Defense counsel's trial strategy
    in this case centered on negating the element of intent. In light of

the evidence at the hearing on remand, defense counsel's actions were objectively reasonable. Defendant failed to establish that there was a reasonable probability that the trial's outcome would have been different had his counsel tried the case differently. None of defendant's proffered witnesses would have corroborated his claim that he did not intend to commit a larceny, and some of their testimony would have conflicted with defendant's own testimony.

2. Judicial fact-finding to score Michigan's sentencing guidelines does not violate the Sixth Amendment. Defendant argued that under *Alleyne v United States*, 570 US ___; 133 S Ct 2151 (2013), judicial fact-finding using Michigan's sentencing guidelines as a guide to determine the minimum term of an indeterminate sentence from a recommended range violated the Sixth and Fourteenth Amendments. In *Apprendi v New Jersey*, 530 US 466 (2000), the United States Supreme Court held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In *People v Drohan*, 475 Mich 140 (2006), the Michigan Supreme Court held that *Apprendi* and its progeny did not affect Michigan's sentencing guidelines because under Michigan's sentencing scheme, MCL 769.8(1), the maximum sentence that a trial court may impose on the basis of the jury's verdict is the statutory maximum. As long as the defendant receives a sentence within that statutory maximum, the trial court may use judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict or the defendant's guilty or no-contest plea. Defendant argued that *Alleyne* eviscerated *Drohan*'s underpinnings. *Alleyne*, however, distinguished judicial fact-finding to establish a mandatory minimum floor of a sentencing range from the traditional wide discretion accorded trial courts to establish a minimum sentence within a range authorized by law as determined by a jury verdict or a defendant's plea, noting that broad sentencing discretion, informed by judicial fact-finding, does not violate the Sixth Amendment. In this case, judicial fact-finding within the context of Michigan's sentencing guidelines was not used to establish a mandatory minimum floor of a sentencing range. Rather, judicial fact-finding and the sentencing guidelines were used to inform the trial court's sentencing discretion within the maximum sentence. The statutes defendant was convicted of violating do not provide for a mandatory minimum sentence on the basis of any judicial fact-finding. While judicial fact-finding in scoring the sentencing guidelines produces a recommended range for the minimum sentence of an indeterminate sentence, it does not establish a mandatory minimum.

Affirmed.

CONSTITUTIONAL LAW — RIGHT TO TRIAL BY JURY — SENTENCING GUIDELINES —
    FACT-FINDING TO SCORE.

> Judicial fact-finding used in scoring the Michigan sentencing guide-
> lines does not violate the Sixth Amendment under the decision in
> *Alleyne v United States*, 570 US ___; 133 S Ct 2151 (2013).

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Daniel E. Hass*, Prosecuting Attorney, and *Mark G. Sands*, Assistant Attorney General, for the people.

State Appellate Defender (by *Christine A. Pagac*) for defendant.

Before: RIORDAN, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM. Defendant was convicted by a jury of breaking and entering with intent to commit a larceny, MCL 750.110, and possession of burglary tools, MCL 750.116. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 6 years and 4 months to 20 years' imprisonment. He appeals by right. We affirm.

On January 3, 2011, police responded to a call about a possible break-in of a Menominee beauty salon. Upon arriving, a police officer shined a spotlight on the building and saw defendant inside. Defendant fled, discarding a tire iron as he ran. He was apprehended soon thereafter. At trial, defendant did not dispute that he had broken into the salon using the tire iron; however, he claimed that he did not have the necessary intent to commit a larceny to convict him of the breaking and entering charge.[1] Instead, defendant

---

[1] Although defendant does not specifically state that he is conceding that the alleged error would not have affected his conviction of possession of burglary tools, it can be inferred from his sole emphasis on the intent to commit a larceny that he is doing so. See *People v Wilson*, 180 Mich App 12,

claimed the break-in was a "cry for help" because he wanted to be arrested so he could receive help for mental health problems he had long suffered from. He testified that he was at a friend's house on the night of the break-in and "told everyone there, 'I can't deal with this, and I'm going to go get arrested.' "

For his sole issue on appeal, defendant asserted a claim of ineffective assistance of counsel and filed a motion to remand to the trial court under MCR 7.211(C)(1) in order to develop a factual record. He named three persons as potential witnesses that his trial counsel never contacted who could, he asserted, have provided information relevant to his defense theory. The three are Natasha Fuller (defendant's girlfriend at the time of the break-in), Shane Sullivan, and Lisa Christensen (Sullivan's ex-wife). We granted the motion. All three identified witnesses were called to testify, along with defendant's trial counsel and defendant's brother, William Herron. The trial court denied defendant's motion for a new trial.

Defendant argues he was deprived of his right to effective assistance of counsel by trial counsel's failure to investigate and call witnesses who would have corroborated his claim that he did not intend to commit larceny when he broke into the salon. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, while questions of constitutional law are reviewed de novo. *Id.*

The Sixth Amendment of the United States Constitution and Article 1, § 20 of the Michigan Constitution

16; 446 NW2d 571 (1989) (instructing that the intent element for possession of burglary tools is "the intent to use them for breaking and entering").

guarantee the right to effective assistance of counsel for criminal defendants. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). To establish that his counsel did not render effective assistance and therefore that he is entitled to a new trial, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

When determining whether counsel's performance fell below an objective standard of reasonableness, defense counsel is given "wide discretion" to decide questions of "trial strategy." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Thus, whether to call witnesses is presumed to be a matter of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Nevertheless, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 US at 690-691. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004).

Defense counsel testified that his trial strategy centered on negating the element of intent. Of the identified witnesses, defendant's trial counsel said that he sent a letter to Fuller. Although counsel stated that he also sent a letter to defendant's brother, William, both

denied receiving the letters. Neither Christensen nor Sullivan was sent a letter because defendant did not provide counsel a mailing address. There is no indication that counsel followed up with either William or Fuller, and he took no steps to locate either Christensen or Sullivan.

Presiding as fact-finder at the evidentiary hearing, the trial court was positioned to assess the credibility of the witnesses. See *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003); MCR 2.613(C). Thus, the court could have rejected the testimony of William Herron and Fuller that they did not receive the letters counsel sent. And counsel's office apparently received a communication from Fuller that she did not want to become involved in the trial. Defendant does not explain how counsel could have located Christensen and Sullivan without defendant's providing further information about their whereabouts. In any event, Sullivan was apparently living with William Herron at the time of trial, and assuming that the letter to William arrived, Sullivan would likely have been put on notice that defendant was looking for people who could testify about his mental state before the break-in.

As for Christensen, she testified that trial counsel frequented the restaurant where she worked; however, there is no evidence that defense counsel was aware that she worked there, or even knew who she was. Christensen testified that her last name was Sullivan when she and Shane were married. Defense counsel testified that he knew Sullivan had a wife named Lisa, but he did not know her last name was Christensen. In fact, counsel testified that he had never heard the name Lisa Christensen until the day before the evidentiary hearing. He also testified that he did not see her name in any of the correspondence he had received from

defendant. And if Christensen did know who defense counsel was and desired to testify, she could have approached counsel in the restaurant.

Under these circumstances, defense counsel's actions were objectively reasonable.

Further, defendant has failed to establish that there is a reasonable probability that the outcome of the trial would have been different had counsel tried the case differently. None of defendant's proffered witnesses would have corroborated his claim that he did not have the intent to commit a larceny. While they testified that defendant seemed to have mental health problems and had commented in the past that he was more comfortable and coped better in jail, none of the witnesses testified that defendant told them he planned to be arrested. Hence, their testimony would have conflicted with defendant's own testimony that he claimed he had told several people that night "I can't deal with this, and I'm going to go get arrested." Thus, the missing witnesses' testimony would have discredited defendant's defense.

Defendant testified that he approached the salon from behind and parked his bike behind the store. He was dressed in black. He removed and discarded a screen behind the salon and used a tire iron to pry open a window. It is reasonable to infer from this evidence that defendant planned the break-in and had taken steps to avoid detection. As he was fleeing the police, he tossed the tire iron. Then later, when asked if he were trying "to conceal evidence," he responded, "Yes." So, again, it is unlikely that the proposed testimony would have negated the effect of this evidence and the reasonable inferences that arise from it. See *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003) (observing that evidence of flight supports an inference of

"consciousness of guilt" and that the term "flight" includes fleeing the scene of the crime). Consequently, counsel's actions in trying the case do not create doubt about the outcome of the trial. *Grant*, 470 Mich at 493.

Defendant also argues in a supplemental brief that in light of *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), judicial fact-finding using Michigan's sentencing guidelines, see MCL 769.34(2) and MCL 777.1 *et seq.*, as a guide to determine a minimum term of an indeterminate sentence from a recommended range violates the Sixth and Fourteenth Amendments of the United States Constitution. We disagree. "We review de novo questions of constitutional law." *People v Harper*, 479 Mich 599, 610; 739 NW2d 523 (2007).

In *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the Supreme Court held that the Sixth and Fourteenth Amendments of the United States Constitution limited the ability of judges to increase the maximum punishment of individuals convicted of crimes on the basis of judicial fact-finding. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Subsequently, in *Blakely v Washington*, 542 US 296, 303; 124 S Ct 2531; 159 L Ed 2d 403 (2004), the Supreme Court held that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Thus, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303-304. Our Supreme Court summarized

the applicability of these rulings to Michigan's sentencing scheme in *Harper*, 479 Mich at 610:

> Under the Due Process Clause of the Fifth Amendment and the jury trial guarantees of the Sixth Amendment, any fact that increases the maximum penalty for a crime must be submitted to a jury and proven beyond a reasonable doubt. The Fourteenth Amendment requires that the states' criminal sentencing schemes conform to this rule. The rule includes exceptions for the fact of prior convictions and any facts admitted by the defendant.

*Apprendi* and its progeny engendered challenges to Michigan's sentencing guidelines, especially after *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005), which applied the *Apprendi* rule to the federal sentencing guidelines used to establish a determinate sentence for federal criminal violations. In two opinions, *Booker* held that the federal guidelines were unconstitutional because they used judicial factfinding and were mandatory. *Id.* at 232-233 (opinion by Stevens, J.); *id.* at 245 (opinion by Breyer, J.). "If the [federal] Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." *Id.* at 233 (opinion by Stevens, J.). So the remedy the Court imposed was to sever the statutory provisions making the federal guidelines mandatory. See *id.* at 245 (opinion by Breyer, J.). *Booker* reaffirmed the *Apprendi* holding: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at 244 (opinion by Stevens, J.).

In *People v Drohan*, 475 Mich 140, 164; 715 NW2d 778 (2006), our Supreme Court held that *Apprendi* and its progeny do not affect Michigan's sentencing guidelines, primarily because the maximum sentence imposed on being convicted of a crime in Michigan by a jury verdict or a defendant's plea of guilty or no contest is the statutory maximum.

> Under Michigan's sentencing scheme, the maximum sentence that a trial court may impose on the basis of the jury's verdict is the statutory maximum. MCL 769.8(1). . . . As long as the defendant receives a sentence within that statutory maximum, a trial court may utilize judicially ascertained facts to fashion a sentence within the range authorized by the jury's verdict. [*Id.*]

The *Drohan* Court also relied on the Supreme Court's decision in *Harris v United States*, 536 US 545; 122 S Ct 2406; 153 L Ed 2d 524 (2002), which held that the rule of *Apprendi* did not apply to judicial fact-finding for the purpose of establishing the minimum term of a sentence within a prescribed statutory maximum. *Drohan*, 475 Mich at 151-152.

Defendant argues that the underpinnings of *Drohan* have been eviscerated by the Supreme Court's decision in *Alleyne*, which overruled *Harris* and held that "any fact that increases the mandatory minimum is an 'element' [of a crime] that must be submitted to the jury." *Alleyne*, 570 US at ___; 133 S Ct at 2155. Essentially, the Court reasoned that a mandatory minimum sentence established the floor of a sentencing range and found it "impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime." *Id.* at ___; 133 S Ct at 2160. The Court restricted its reasoning to judicial fact-finding establishing a *mandatory minimum* sentence. "It is indisputable that a fact triggering a *mandatory minimum* alters the

prescribed range of sentences to which a criminal defendant is exposed." *Id.* at ___; 133 S Ct at 2160 (emphasis added.) Thus, "the core crime and the fact triggering the *mandatory minimum* sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at ___; 133 S Ct at 2161 (emphasis added.) But in applying the *Apprendi* rule to facts that establish the mandatory minimum of a sentencing range, the *Alleyne* Court distinguished judicial fact-finding "used to guide judicial discretion in selecting a punishment 'within limits fixed by law.' " *Id.* at ___ n 2; 133 S Ct at 2161 n 2, quoting *Williams v New York*, 337 U S 241, 246; 69 S Ct 1079; 93 L Ed 1337 (1949). Writing for the Court in Part III(C) of *Alleyne*, Justice Thomas expounded on this point:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment. See, *e.g., Dillon* v. *United States*, 560 U. S. [817, 828-829; 130 S Ct 2683; 177 L Ed 2d 271 (2010)] ("[W]ithin established limits[,] . . . the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts" (emphasis deleted and internal quotation marks omitted)); *Apprendi*, 530 U. S., at 481 ("[N]othing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute").[6] This position has firm historical roots as well. As Bishop explained:
>
> > "[W]ithin the limits of any discretion as to the punishment which the law may have allowed, the

judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by the allegations of the indictment." [1] Bishop [Criminal Procedure (2d ed)] § 85, at 54.

"[E]stablishing what punishment is available by law and setting a specific punishment within the bounds that the law has prescribed are two different things." *Apprendi*, [530 US] at 519 (THOMAS, J., concurring). Our decision today is wholly consistent with the broad discretion of judges to select a sentence within the range authorized by law.

[6] See also *United States* v. *Tucker*, 404 U. S. 443, 446 [92 S Ct 589; 30 L Ed 2d 592] (1972) (judges may exercise sentencing discretion through "an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come"); *Williams* v. *New York*, 337 U. S. 241, 246 (1949) ("[B]oth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law").

[*Alleyne*, 570 US at ___; 133 S Ct at 2163 (alterations in original except those related to citations).]

In this case, judicial fact-finding within the context of Michigan's sentencing guidelines was not used to establish the mandatory minimum floor of a sentencing range. Rather, judicial fact-finding and the sentencing guidelines were used to inform the trial court's sentencing discretion within the maximum determined by statute and the jury's verdict. The statutes defendant was convicted of violating do not provide for a *mandatory minimum* sentence on the basis of any judicial fact-finding. While judicial fact-finding in scoring the sentencing guidelines produces a recommended range for the minimum sentence of an indeterminate sen-

tence, the maximum of which is set by law, *Drohan*, 475 Mich at 164, it does not establish a *mandatory minimum*; therefore, the exercise of judicial discretion guided by the sentencing guidelines scored through judicial fact-finding does not violate due process or the Sixth Amendment right to a jury trial. *Alleyne*, 570 US at ___; 133 S Ct at 2163 & n 6.

We reject defendant's argument to the contrary. Defendant contends that although a court may depart from a guidelines recommended minimum sentence range on finding a substantial and compelling reason to do so, MCL 769.34(3), the presumptive minimum sentencing range is the equivalent of a mandatory minimum sentence. But defendant relies in support of his argument on *Booker*, *Blakely*, *Cunningham v California*, 549 US 270; 127 S Ct 856; 166 L Ed 2d 856 (2007), and the Supreme Court's recent decision in *Alleyne*. As for *Booker* and *Blakely*, we conclude that nothing in those decisions affects Michigan's sentencing guidelines. *Drohan*, 475 Mich at 152-156. With respect to *Cunningham*, our Supreme Court has specifically examined, on remand from the United States Supreme Court, whether that decision—involving a California determinate sentencing law (DSL) using judicial fact-finding—rendered Michigan's sentencing guidelines a violation of the *Apprendi* rule. *People v McCuller*, 479 Mich 672, 676; 739 NW2d 563 (2007). The Court distinguished the California DSL from Michigan's sentencing guidelines, in particular Michigan's use of a presumptive intermediate sanction if the guidelines score falls within a straddle cell, MCL 769.34(4)(a). *McCuller*, 479 Mich at 686-691. The Court reaffirmed that Michigan's sentencing scheme does not violate *Apprendi* and its progeny because, except for the application of habitual-offender statutes, " 'the *maximum* portion of a defendant's indeterminate sentence is prescribed by MCL 769.8, which requires a sentencing judge to impose no less

than the prescribed statutory maximum sentence as the maximum sentence for every felony conviction.' " *McCuller*, 479 Mich at 694, quoting *Harper*, 479 Mich at 603. The possibility of an intermediate sanction under MCL 769.34(4)(a) " 'is a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period of time that is *less* than that authorized by the jury's verdict or guilty plea, a circumstance that does not implicate *Blakely*.' " *McCuller*, 479 Mich at 694, quoting *Harper*, 479 Mich at 603-604.

In essence, then, defendant's *Apprendi* argument is reduced to reliance on *Alleyne* alone. We conclude that defendant's argument fails in light of the pains the United States Supreme Court took in Part III(C) of its opinion to distinguish judicial fact-finding that establishes a mandatory minimum floor of a sentencing range from the traditional wide discretion accorded trial courts to establish a minimum sentence within a range authorized by law as determined by a jury verdict or a defendant's plea. We hold that judicial fact-finding to score Michigan's sentencing guidelines falls within the " 'wide discretion' " accorded a sentencing court " 'in the sources and types of evidence used to assist [the court] in determining the kind and extent of punishment to be imposed within limits fixed by law[.]' " *Alleyne*, 570 US at ___ n 6; 133 S Ct at 2163 n 6, quoting *Williams*, 337 US at 246. Michigan's sentencing guidelines are within the "broad sentencing discretion, informed by judicial factfinding, [that] does not violate the Sixth Amendment." *Alleyne*, 570 US at ___; 133 S Ct at 2163.

We affirm.

RIORDAN, P.J., and MARKEY and K. F. KELLY, JJ., concurred.