# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALEXANDER LEE TAYLOR,

Defendant-Appellant.

UNPUBLISHED
January 27, 2015

No. 318827
Saginaw Circuit Court
LC No. 11-035992-FC

Before: MURPHY, P.J., and METER and SERVITTO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to commit murder (AWIM), MCL 750.83, and carrying a dangerous weapon with unlawful intent, MCL 750.226. The trial court sentenced defendant as an habitual offender, third offense, MCL 769.11, to 25 to 45 years' imprisonment for the AWIM conviction and 6 to 10 years' imprisonment for the dangerous-weapon conviction. In an earlier appeal, this Court vacated the dangerous-weapon conviction and remanded for resentencing in order for the court to contemplate any potential alteration to the guidelines scoring in light of the vacated conviction. *People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued July 11, 2013 (Docket No. 310729). On remand, defendant was again sentenced to 25 to 45 years' imprisonment for the AWIM conviction. The new judgment of sentence indicated that defendant had 913 days of jail credit, and it still included the dangerous-weapon conviction. Subsequently, after the filing of defendant's appellate brief and pursuant to a stipulation, the trial court amended this judgment, such that it now reflected 950 days of jail credit and omitted the dangerous-weapon conviction that had been vacated by this Court.[1] Defendant now appeals the AWIM sentence, arguing that

---

[1] This amended judgment of sentence is not included in the lower court record that was conveyed to us because it was entered after appellate proceedings were well underway. It is attached to the prosecutor's response brief on appeal, and defendant has not given any indication that it lacks authenticity. Accordingly, we *sua sponte* expand the record to include the newly amended judgment of sentence. One of defendant's arguments on appeal is that the judgment of sentence contained clerical errors, given his entitlement to 950 instead of 913 days of jail credit and the failure to delete the vacated dangerous-weapon conviction. In light of the stipulated amended judgment that corrected these errors consistent with defendant's wishes, the issue has now been rendered moot.

-1-

offense variable (OV) 6, MCL 777.36, was incorrectly scored at 50 points instead of 25 points. We affirm.

In the previous opinion, this Court summarized the underlying facts as follows:

> Defendant lived at Beacon Harbor House, an adult foster care home for people with mental limitations. On February 3, 2011, defendant entered a room and repeatedly stabbed a staff member who was giving medications to another resident. As a result of the attack, the victim lost 80 percent of his blood, his lung collapsed, and he had to undergo two emergency surgeries. The police arrested defendant later that day at his mother's house, and defendant gave two incriminating statements that were recorded and played for the jury. [*Taylor*, slip op at 1.]

In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court provided clarification with respect to the appropriate standards of review on issues concerning the scoring of the sentencing guidelines:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.

Pursuant to MCL 777.36(1)(a), 50 points for OV 6 must be scored by the trial court under any one of the following three circumstances:

> The offender had premeditated intent to kill *or* the killing was committed while committing or attempting to commit arson, criminal sexual conduct in the first or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping *or* the killing was the murder of a peace officer or a corrections officer. [Emphasis added.]

Given that the last two circumstances, i.e., the felony-murder situation and the murder of an officer, require an actual killing, the only potentially applicable prong of subsection (1)(a) as to our case concerns an offender who had a "had premeditated intent to kill." We note that defendant does not argue that the premeditation prong requires an actual killing. And under MCL 777.22(1), a trial court must "[s]core offense variable[] . . . 6 for homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or *assault with intent to commit murder*." (Emphasis added.) At resentencing, defendant's counsel objected to the scoring of 50 points for OV 6, arguing that only 25 points should be scored because defendant did not have a premeditated intent to kill.[2] Twenty-five points is the appropriate score when a 50-point score is

---

[2] We note that OV 6 had been scored at 50 points for purposes of the original sentencing, that defendant expressly agreed to that score, and that defendant did not challenge the 50-point score

inapplicable and "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b).[3] In ruling that 50 points were properly scored under OV 6, the trial court observed:

> Here the primary issue, I think, is the premeditated intent to kill. I will note that this, arguably, could be an — an intent to kill that was based on a larceny, but — what we did have here certainly was something that appeared to be out of the blue, but, first of all, the defendant has an assaultive history, I would note that. That's clearly reflected in the Presentence Report.

> The size of the knife, certainly — maybe it was small, but it certainly very nearly killed this individual, and part of the reason was that he, the defendant, stabbed the victim repeatedly. There was a total of 10 puncture wounds or cuts that were noted during the course of the trial. That size of a knife might be all he had access to. He certainly wasn't supposed to have that kind of a weapon or object in his possession in that home where he was living.

> I would also note that, based on the jury verdict, which was a verdict of guilty for assault with intent to commit murder, that's a basis or a support for the score. But in addition, there is the trial testimony, there's the Presentence Report, and that gives an indication of the statement he gave to the police, which is also noted in the transcript, although not directly, because there were tapes played at trial. But he — if you want to look at something in writing, the Presentence Report refers to the statement that he gave to the officers, and that is noted on page three of the Presentence Investigation Report [PSIR]. The defendant was [M]irandized, he agreed to speak with the officers. He stated he was with [the victim] in the medication room. He stabbed him a couple times in the neck, took keys on the table, took the van to his mother's. He stated he decided to do it the day prior, and — and that it was going to be someone that was working in the home, not necessarily [the victim]. He did it because he wanted to be someone in life. He stated that he — he had felt it was necessary to do this, as life was tough and he might have to put someone out. Sergeant Pfau asked the defendant if he perceived this as wrong. He replied that he did.

---

in the initial appeal. Regardless of any possible waiver issue or concern that this particular scoring matter exceeded the scope of the remand directive, we shall address the substance of defendant's argument.

[3] If defendant's argument was legally sound, which it is not, the error would alter the OV level under the applicable grid and thus change the guidelines range, necessitating resentencing. MCL 777.16d (AWIM is a class A offense); MCL 777.62 (class A grid); MCL 777.21(3)(b) (adjustment of top end of guidelines range for third habitual offender status); *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006) (alteration of guidelines range generally mandates resentencing).

He was [M]irandized again about two hours later. He stated he had purchased the knife on Friday at the Dollar Store in Carrollton. He stated that it necessarily — it wasn't necessarily going to be [the victim] that got stabbed. Then he talked about the other individuals there, at the home, and then he goes on an talks about the knife. So all of that put together certainly warrants the score of 50 points . . . .

Later in the sentencing hearing, the trial court remarked, "I believe he did plan it over, you know, a period of a few days, perhaps."

Defendant first argues that the trial court's initial reference to "a larceny" suggested reliance on the felony-murder or second prong of MCL 777.36(1)(a), which defendant claims would be improper because there was no killing. As is evident from the passage quoted above, the trial court's fleeting reference to a larceny did not serve as the basis for its decision to score OV 6 at 50 points. Rather, the trial court ultimately premised its ruling on the basis of the trial testimony and the information in the PSIR that reflected a premeditated intent to kill.[4]

Defendant next argues that the trial court erred in relying on the jury's verdict in scoring OV 6 at 50 points, given that AWIM does not include a premeditation element. We note that MCL 777.36(2)(a) provides that "[t]he sentencing judge shall score . . . [OV 6] consistent with a jury verdict unless the judge has information that was not presented to the jury." The elements of AWIM "are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren (After Remand)*, 200 Mich App 586, 588; 504 NW2d 907 (1993) (citation omitted). Given that a "murder" can still occur absent premeditation, e.g., second-degree murder," establishing the offense of AWIM does not require proof of premeditation. The trial court's ruling on OV 6 was not inconsistent with the jury's verdict; rather, it merely complemented the verdict by addressing an issue the jurors were not required to reach. Although the trial court was mistaken in concluding that the jury's verdict itself supported a finding of premeditation and the score of 50 points, the court then proceeded to discuss the additional grounds that showed premeditation, as reflected in the trial testimony and the PSIR.

Defendant next argues that the trial testimony and PSIR information did not support the 50-point score for OV 6. We disagree. "Premeditation, which requires sufficient time to permit the defendant to take a second look, may be inferred from the circumstances surrounding the killing." *People v Coy*, 243 Mich App 283, 315; 620 NW2d 888 (2000). The high number of stab wounds, defendant's statement that he decided to do the stabbing the day before the actual assault, the preparatory purchase of the knife used in the attack, and defendant's asserted desire to kill someone, all of which were alluded to by the trial court in scoring OV 6 at 50 points, certainly support a conclusion that defendant had time to take a second look, thereby establishing premeditation. There was a preponderance of evidence supporting the scoring of OV 6 at 50 points, there were no clear errors in the court's underlying factual determinations, and the court properly applied the facts to the law set forth in OV 6. Reversal is unwarranted.

---

[4] "A court may rely on the contents of a PSIR in calculating the guidelines." *People v Nix*, 301 Mich App 195, 205 n 3; 836 NW2d 224 (2013) (citation omitted).

Finally, defendant contends, pursuant to *Alleyne v United States*, __ US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013), that his constitutional rights under the Sixth and Fourteenth Amendments to a jury trial and to have the prosecution prove its case beyond a reasonable doubt were violated, given that the trial court engaged in impermissible judicial fact-finding in regard to scoring OV 6. In *Alleyne*, the United States Supreme Court held that facts that increase a mandatory minimum sentence must "be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2163. In *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), this Court rejected application of *Alleyne* to Michigan's sentencing scheme. In *People v Lockridge*, 304 Mich App 278; 849 NW2d 388 (2014), this Court acknowledged that it was bound by *Herron* and therefore concluded that *Alleyne* did not impact sentencing in Michigan, although two members of the panel voiced disagreement with *Herron*. Our Supreme Court granted leave in *Lockridge*, 496 Mich 852 (2014), and is holding *Herron* in abeyance pending its ruling in *Lockridge*, 846 NW2d 924 (2014). We reject defendant's argument in light of the fact that we currently remain bound by *Herron* and *Lockridge*. MCR 7.215(J)(1).

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Deborah A. Servitto