# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH RAYMOND EVANS,

        Defendant-Appellant.

UNPUBLISHED
February 26, 2015

No. 318214
Kent Circuit Court
LC No. 13-001177-FC

Before: BECKERING, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Defendant, Joseph Raymond Evans, appeals as of right his jury trial conviction for assault with intent to commit great bodily harm less than murder, MCL 750.84. The trial court sentenced defendant to 3 to 10 years' imprisonment for his conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant and Ahnetra Williams have three children together. The prosecution presented evidence at trial to establish that on January 24, 2013, defendant and Ahnetra got into an argument on the telephone. Ahnetra was out and defendant was at her apartment at the time. Once Ahnetra got home, defendant greeted her at the door and then proceeded to the bathroom to take a shower. While defendant was in the shower, Ahnetra's parents, Mary and Joe Williams, came over at Ahnetra's request to remove defendant from the premises.[1] Joe arrived at the apartment and kicked down the bathroom door. He grabbed defendant by the neck and slammed him between the shower and the toilet. Joe testified that he tussled with defendant until he became tired. After Joe and defendant stopped fighting, defendant exited the bathroom. Mary then struck defendant with a vase. Joe told defendant to get dressed and leave the apartment. Defendant walked into a bedroom and got dressed.

---

[1] As defendant acknowledges, although Ahnetra had let him stay at her apartment, he had been told by the court not to have any contact with her as a bond condition for a pending domestic violence charge.

-1-

Approximately four minutes later, defendant left the bedroom, went into the kitchen, and grabbed a knife. He then ran at Joe and stabbed him three times in the back before Joe gained control of the knife. Joe broke the knife, threw defendant against a wall, jumped on top of him, and started choking him.

Ahnetra called 9-1-1. Police officer William Kelly arrived and went inside where he saw defendant pinned against the wall by Joe and Mary. Kelly did not observe any weapons other than the broken knife. Kelly observed that Joe had "obvious and significant stab wounds to his back" and cuts on his face. Defendant did not appear to have any injuries. He was handcuffed, removed from the home, and placed in a police cruiser. Inside the police cruiser, defendant waived his *Miranda*[2] rights and admitted to wielding a knife in Ahnetra's apartment.

At trial, defendant admitted to possessing a knife on the day of the assault. He testified that he did so because he was trying to leave the apartment, not attack anyone. He testified that he stabbed Joe, but only in self defense after Joe began choking him. According to defendant, Joe was unarmed during the entire encounter. However, defendant testified that Mary had a knife at some point during the fracas.

## II. INEFFECTIVE ASSISTANCE

Defendant first claims that his trial counsel was ineffective for failing to impeach Ahnetra with statements she allegedly made during recorded telephone conversations with defendant while he was incarcerated. At trial, Ahnetra testified that she did not observe any other weapons used during the fight. When answering a question on cross-examination about how Joe had broken down the bathroom door of the apartment, she mentioned that police officers told her about a box cutter on the toilet, testifying that "they had told me, 'cause the officer said that it was a box cutter on the toilet or something." This statement, which did not appear to be responsive to the question posed by defense counsel, was not explored further by either party. Defendant now argues that his trial counsel was ineffective for failing to impeach Ahnetra's testimony with recorded telephone calls in which she allegedly mentioned a box cutter that was located in her living room. More specifically, defendant claims that the telephone recordings could have "potentially" been used "if" Ahneta "would have lied about the existence of this box cutter in the living room."

Defendant moved this Court for a *Ginther*[3] hearing on the issue, and this Court denied the motion because defendant failed to show that the proposed evidence would likely have been admitted at trial and made a difference in the outcome. As such, our review is limited to errors apparent on the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

To establish ineffective assistance of counsel, a defendant must show "that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). "To show that defense counsel's performance was objectively unreasonable, the defendant must overcome the strong presumption that defense counsel's decisions constituted sound trial strategy." *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). The decision to call or question witnesses is presumed to be a matter of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). The failure to call or question witnesses can constitute ineffective assistance of counsel only when it deprives defendant of a substantial defense. *Id.* "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). In addition, "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

As mentioned above, this Court denied defendant's motion for a *Ginther* hearing and defendant did not move to expand the record on appeal to include the telephone recordings from the jail. Regardless, even if we were to consider the substance of the recorded telephone calls, defendant has not established that he was deprived of a substantial defense. At most, defense counsel could have used the statements in the calls to try to impeach Ahnetra's trial testimony about the location of the box cutter should she have denied that it was ever in the living room. However, the value of her statements on those recorded calls for impeachment purposes would be limited for two reasons. First, Ahnetra's trial testimony never indicated that the box cutter was only present in the bathroom; rather, she stated that, at one point, it was located in the bathroom. This testimony does not foreclose the possibility that the box cutter was later moved to the living room. Second, the recorded telephone calls do not contain statements from Ahnetra that the box cutter was used as a weapon against defendant; consequently, the calls could not have been used to impeach Ahnetra's trial testimony that neither she, Joe, nor Mary used a weapon against defendant in the fight that took place in the living room. As such, the recorded calls' value as impeachment evidence is speculative and tenuous, at best. Where the record reveals that counsel already impeached Ahnetra's testimony in other regards, we do not find that counsel's performance was objectively unreasonable as alleged by defendant.

In addition, although defendant argues that the recorded telephone calls could have been used to prove the existence and location of the box cutter, defendant cites no hearsay exception or exclusion pursuant to which he could have offered Ahnetra's statements during the telephone calls as substantive evidence to establish that a box cutter was located in the living room—or, for that matter, used as a weapon against defendant—during the fight.[4] Counsel was not ineffective for failing to advance a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[4] No one, not even defendant, testified that a box cutter was used or possessed during the ordeal.

## III. SENTENCING

Next, defendant argues that his sentencing violated the Sixth and Fourteenth Amendments to the United States Constitution because the trial court engaged in judicial fact-finding that increased the floor of the range of permissible sentences in violation of *Alleyne v United States*, ___ US ___, 133 S Ct 2151; 186 L Ed 2d 314 (2013). A panel of this Court ruled in *People v Herron*, 303 Mich App 392, 399-405; 845 NW2d 533 (2013), app held in abeyance 846 NW2d 924 (2014), that *Alleyne* does not apply to Michigan's indeterminate sentencing guidelines. We are bound to follow that precedent, irrespective of the fact that our Supreme Court granted leave to consider this issue in *People v Lockridge*, 496 Mich 852; 846 NW2d 925 (2014). MCR 7.215(C)(2); MCR 7.215(J)(1). Accordingly, defendant's claim of error must be rejected.

Affirmed.


/s/ Jane M. Beckering
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher