# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

VICTOR ANTHONY CORPUZ,

        Defendant-Appellant.

UNPUBLISHED
March 8, 2016

Nos. 315068, 325251
Bay Circuit Court
LC No. 12-010302-FH

---

ON REMAND

Before: GLEICHER, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

In a September 16, 2014 opinion, we determined that the trial court erred in scoring Offense Variables (OVs) 1, 2, and 19 when calculating defendant's minimum sentencing guidelines range. The elimination of those scores did not merit resentencing, standing alone, given defendant's high overall OV score. However, we vacated the defendant's sentences and remanded for resentencing as the court had imposed upwardly departing sentences and we could not "be certain that the court would have departed to the extent chosen" had the OVs been correctly scored. See *People v Gutierrez*, unpublished opinion per curiam of the Court of Appeals, issued September 16, 2014 (Docket Nos. 315057, 315059, 315068), unpub op at 13. Of import at this time, we rejected defendant's challenge "that the trial court improperly engaged in judicial fact-finding in its scoring of the sentencing guidelines, contrary to the rule announced in *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013)," because this Court had concluded in *People v Herron*, 303 Mich App 392, 403; 845 NW2d 533 (2013), that "*Alleyne* does not implicate Michigan's sentencing scheme." *Gutierrez*, unpub op at 11-12.

Defendant filed an application for leave to appeal in the Michigan Supreme Court, which was held in abeyance pending that Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). During that time, the trial court proceeded to resentence defendant to concurrent prison terms within the minimum sentencing ranges and defendant filed a separate claim of appeal from those sentences. Following the resolution of the *Lockridge* matter, the Supreme Court vacated that portion of our earlier decision "that vacated the defendant's sentences and remanded for resentencing" and remanded to this Court for reconsideration in light of *Lockridge*. We consolidated defendant's more recent claim of appeal with the appeal on remand from the Supreme Court. We again remand for the trial court to consider whether it

-1-

would have imposed the same sentences had it known the guidelines would be rendered advisory in *Lockridge*.

## I. *LOCKRIDGE*

Defendant preserved his challenge to the trial court's reliance on judge-found facts by raising it in a motion for resentencing. We review such preserved challenges to "determine whether the beneficiary of the error has established that it is harmless beyond a reasonable doubt." *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999); *People v Stokes*, ___ Mich App ___; ___ NW2d ___ (Docket No. 321303, issued September 8, 2015), slip op at 10.

In his appellate brief filed before our 2014 opinion, defendant complained that the trial court engaged in judicial fact-finding in scoring OVs 1, 2, 3, 4, 7, 10, 14 and 19. We previously held that the trial court erroneously scored OVs 1, 2, and 19. *Gutierrez*, unpub op at 10-11. The Supreme Court took no issue with our reasoning in that regard. Even under *Lockridge*, trial courts must accurately score the relevant variables and calculate a defendant's offense and prior record variable totals. *Lockridge*, 498 Mich at 392 n 28. We adopt our earlier reasoning regarding the improper scoring of OVs 1, 2, and 19, eliminating the need for further review of those variables.

Here, the trial court was indeed required to engage in judicial fact-finding to score the remaining challenged variables. Defendant was convicted of unarmed robbery, MCL 750.350, assault with intent to do great bodily harm less than murder, MCL 750.84, and possession of marijuana, MCL 333.7403(2)(d). The facts underlying the challenged OV scores were not offense elements found by the jury or admitted by defendant. See MCL 777.33(1)(c) (requiring the assignment of 25 points for OV 3 when the defendant's actions cause "life threatening or permanent incapacitating injury"); MCL 777.34 (governing the scoring of OV 4 when the victim suffers "serious psychological injury requiring professional treatment"); MCL 777.37 (governing the scoring of OV 7 when the defendant's treatment of the victim is categorized as "aggravated physical abuse"); MCL 777.40(1)(c) (directing the assignment of 5 points for OV 10 when the defendant exploits a victim based on size difference, intoxication, sleep or unconsciousness); MCL 777.44(1)(a) (requiring the assignment of 10 points when a defendant is the leader in a multiple-offender situation). The 100 points assigned for these variables were the sum total of defendant's OV level. As the deduction of those points would alter defendant's minimum sentence ranges, he would be entitled to further consideration of his sentences under *Lockridge*. See *People v Sardy*, ___ Mich App ___; ___ NW2d ___ (Docket No. 319227, issued December 29, 2015), slip op at 25.

*Lockridge* acknowledges that judicial fact-finding is an integral part of Michigan's legislative sentencing guidelines. The reliance on judicial decision-making to calculate a defendant's mandatory minimum sentence floor violates the Sixth Amendment, however. To preserve the statutory scheme, the Supreme Court rendered the sentencing guidelines advisory. *Lockridge*, 498 Mich at 364-365; *Stokes*, ___ Mich App at ___, slip op at 6-7. The trial court here relied on judge-found facts in calculating defendant's guidelines score but did not treat the resultant range as advisory. Accordingly, at defendant's February 4, 2013 sentencing, the trial court violated defendant's Sixth Amendment rights.

The court also relied upon substantial and compelling reasons to upwardly depart from the guidelines range. As the *Lockridge* Court struck down MCL 769.34(3), a court may now depart within its discretion to impose a "reasonable[]" upward departure sentence. *Lockridge*, 498 Mich at 391-392. In *Lockridge*, 498 Mich at 395 n 31, the Supreme Court explained that a defendant whose sentence represents an upward departure, but who did *not* preserve his *Alleyne* challenge, cannot show the plain error necessary to merit relief. In such cases, the trial court already "clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record." *Id.* (emphasis in original). The Court found it illogical to assume that the trial court would have reached a different decision if it knew the guidelines were advisory. Therefore, remand would be unnecessary in such cases. *Id.*

Despite this message in *Lockridge*, this Court concluded in *People v Steanhouse*, ___ Mich App___; ___ NW2d ___ (Docket No. 318329, issued October 22, 2015), slip op at 25, that this Court must remand for a hearing under *United States v Crosby*, 397 F3d 103 (CA 2, 2005), to consider the reasonableness (interpreted as proportionality) of a departure sentence when faced with an unpreserved *Alleyne* challenge. We discern no ground to afford less protection to a defendant who preserved his challenge. Therefore, in this case, defendant was entitled to a remand to consider the reasonableness of his departure sentences.

## II. INTERIM RESENTENCING

Following our September 2014 opinion, the trial court proceeded to resentence defendant despite that he had filed an application for leave to appeal in the Michigan Supreme Court. The trial court reasoned that as neither this Court nor the Supreme Court had entered a stay of proceedings, it was required to act. This was error. MCR 7.302(C)(5)(a) plainly provides that when a party timely files with the Supreme Court an application for leave to appeal a Court of Appeals decision that remands for further proceedings, those proceedings are stayed "unless the Court of Appeals or the Supreme Court orders otherwise." Neither this Court nor the Supreme Court entered such an order. However, as we have determined that defendant is again entitled to reconsideration of his sentence, albeit on new grounds, the trial court's decision to proceed with resentencing may be harmless.

At the November 20, 2014 resentencing hearing, the trial court sentenced defendant to terms of imprisonment within the minimum sentencing guideline ranges. The court made this decision after considering defendant's good behavior in prison, which showed a marked improvement from his attitude before his conviction. Accordingly, the court was no longer required to consider the reasonableness of its previous upwardly departing sentences.

Pursuant to *Lockridge*, however, defendant was entitled to specific consideration:

> We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from [*Crosby*, 397 F3d at 117-118]:

Some might suppose that the only choice for an appellate court in a case presenting a procedural error in imposing a sentence is between disregarding the error and requiring a new sentencing. However, the choice is not so limited. . . . Bearing in mind the several considerations outlined above that shape the context in which a disposition decision is to be made, we conclude that the "further sentencing proceedings" generally appropriate for pre-*Booker*/*Fanfan*[1] sentences pending on direct review will be a remand to the district court, not for the purpose of a required resentencing, but only *for the more limited purpose of permitting the sentencing judge to determine whether to resentence, now fully informed of the new sentencing regime, and if so, to resentence. . . .*

A remand for determination of *whether* to resentence is appropriate in order to undertake a proper application of the plain error and harmless error doctrines. Without knowing whether a sentencing judge would have imposed a materially different sentence, . . . an appellate court will normally be unable to assess the significance of any error that might have been made. . . .

Obviously, any of the errors in the procedure for selecting the original sentence discussed in this opinion would be harmless, and not prejudicial under plain error analysis, if the judge decides on remand, in full compliance with now applicable requirements, that under the post-*Booker*/*Fanfan* regime the sentence would have been essentially the same as originally imposed. Conversely, a district judge's decision that the original sentence would have differed in a nontrivial manner from that imposed will demonstrate that the error in imposing the original sentence was harmful and satisfies plain error analysis.

*In short, a sentence imposed under a mistaken perception of the requirements of law will satisfy plain error analysis if the sentence imposed under a correct understanding would have been materially different.* [Some emphasis added.]

Thus, in accordance with this analysis, in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is yes, the court shall order resentencing. *Id.* at 118. [*Lockridge*, 498 Mich at 395-397 (ellipses and emphasis in original).]

---

[1] This refers to *United States v Booker*, 543 US 220; 125 S Ct 738; 160 L Ed 2d 621 (2005). Fanfan was one of the respondents in *Booker*.

The trial court did not consider whether it would have imposed the same sentences on resentencing had the sentencing guidelines been advisory. We cannot determine from the record of the November 20, 2014 hearing, whether the court would have altered its course had it been aware of the upcoming change in the law. Accordingly, we must remand for further consideration as required by *Lockridge* relying on *Crosby*. On remand, defendant may choose to forego further resentencing. If he chooses to proceed, however, the trial court must conduct a hearing consistent with *Crosby*.

## III. INDIVIDUAL OV CHALLENGES

In his appeal from his resentencing, defendant also challenges the propriety of various OV scores. "[T]he standards of review traditionally applies to the trial court's scoring of the variables remain viable after *Lockridge*." *Steanhouse*, ___Mich App at ___, slip op at 19. Accordingly, we review the trial court's factual findings for clear error and consider the record to ensure that a preponderance of the evidence supported the score. *Id.*, quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

In relation to OVs 3, 10, and 14, defendant merely states that the scores were improper because they were based solely on judge-found facts. As discussed, this is an invalid argument. In connection with OV 4 and OV 7, however, defendant additionally contends that the record evidence was insufficient to support the court's scores.

MCL 777.34(1)(a) provides for the assignment of 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim." That the victim failed to actually pursue treatment "is not conclusive." MCL 777.34(2). This Court discussed the evidentiary basis for scoring OV 4 in *People v McChester*, 310 Mich App 354; ___ NW2d ___ (2015). In *McChester*, 310 Mich App at 359, this Court found insufficient evidence to score OV 4 where the presentence investigation report merely stated that the victim appeared "visibly shaken." The victim did not provide a victim impact statement or "testify in any meaningful way . . . in regard to her psychological state." *Id.*

The victim in this case did provide meaningful testimony regarding his psychological state following his violent attack by defendant and his two accomplices. The victim asserted that "throughout the whole thing I was scared, I wanted to run away." He continued, "This trying to think about the whole deal, especially afterwards is very difficult. I was terrified and I couldn't see." The victim recounted, "I was terrified. . . . I asked them to please not kill me, . . . I told them I wanted to see my wife one more time." The victim conceded on cross-examination that his trial and preliminary examination testimonies were not entirely consistent. He explained that the preliminary examination "was only a very short time after" the attack and he "was in a really bad emotional state." It was only more recently that he had "been able to deal with this a little bit better." The preliminary examination transcript poignantly reflects the victim's emotional distress. The prosecutor had to calm the victim so he could testify. The victim explained that his "heart's beatin' so fact" and "I'm very upset, these gentlemen tried to kill me." The stress of testifying even caused a physical reaction; the victim developed stomach pains and became nauseous partway through the examination.

As the testimony reveals, this was not a case with an indifferent victim. The victim was brutally attacked and suffered lasting emotional trauma. The record is clear that the victim required treatment, regardless of whether he secured such services. Therefore, the trial court did not err in scoring OV 4 at 10 points.

Defendant similarly challenges the factual basis for scoring 50 points for OV 7, reflecting that "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." We determined in our prior opinion that defendant's score was supportable because he acted with "excessive brutality." *Gutierrez*, unpub op at 9-10. Accordingly, we need not consider defendant's new challenge.

We remand for further sentencing proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen