# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANNY PAUL VINSON,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2015

No. 317778
Kalamazoo Circuit Court
LC No. 2013-000145-FC

Before: O'CONNELL, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (Count I); armed robbery, MCL 750.529 (Count II); first-degree home invasion, MCL 750.110a(2) (Count III); assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a) (Count IV); unlawful imprisonment, MCL 750.349b (Count V); felon in possession of a firearm, MCL 750.224f (Count VI); and possession of a firearm during the commission of a felony, MCL 750.227b (Count VII). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 35 to 75 years' imprisonment on Count I; 25 to 40 years' imprisonment on Counts II, III, and V; 15 to 30 years' imprisonment on Count IV; 2 to 15 years' imprisonment on Count VI; and 2 years' imprisonment on Count VII. The sentences for Counts II through VI are concurrent, but consecutive to Count VII. The sentence in Count I is consecutive to Counts II through VI. We affirm.

Defendant's convictions arise from the break-in, robbery, and physical and sexual assault of the victim during the early morning hours of January 22, 2013. Defendant and the victim had a previous dating relationship, and defendant previously resided with the victim in her Kalamazoo apartment. The relationship ended after two incidents of domestic violence, for which defendant was arrested. The victim subsequently obtained a personal protection order (PPO) against defendant and forced him to move out around January 16, 2013. At approximately 1:30 a.m. on January 22, the victim was in her apartment watching television and talking on the telephone when two masked individuals kicked in her front door. She was ordered to the floor, and one perpetrator struck her in the head with either a shotgun or rifle. The first individual (later identified as Curtis Hankton) proceeded to rummage through the victim's apartment, stealing various items along the way, while the second individual (defendant) stood over the victim, beating her repeatedly with the rifle and kicking her in the ribs. Defendant then forced the victim into her bedroom, where he continued beating her and also vaginally penetrated

-1-

her with the rifle. It was in the bedroom that defendant took off his mask, revealing his identity to the victim.

Eventually, defendant drove the victim's vehicle—with her in it—to the home of Lafunta Summers, where defendant met back up with Hankton, who had earlier left the victim's apartment. From there, defendant drove down I-94 toward Watervliet. Hankton followed in defendant's vehicle. Along the way, the two vehicles stopped at a gas station for fuel, and also at "Safari Joe's," where defendant and Hankton conferred before deciding to take the victim to the hospital rather than kill her. They proceeded toward Watervliet, stopping once at a Shell gas station, where defendant asked for directions. They eventually dropped the victim off at the hospital, where a sexual assault nurse examiner treated her for her extensive injuries.

Defendant was eventually arrested, but denied being in Kalamazoo on the night in question. Further investigation led police to Hankton and Summers. During the course of the investigation, police discovered several damaging pieces of evidence, including a text message from defendant to Summers at approximately 1:30 a.m. on January 22 stating "we in here," cellular tower mapping data indicating that defendant was near the victim's apartment at the time the text message was sent, a receipt inside defendant's vehicle from 11:30 p.m. on January 21 from a McDonald's near the victim's apartment, video surveillance footage from that McDonald's showing a vehicle matching defendant's using the drive-thru, and surveillance footage from a Shell gas station, showing an individual matching defendant's description. The store employee testified at trial that the individual in the footage asked him for directions to the nearest hospital. The victim identified the individual in the surveillance footage as defendant.

At trial, Summers testified that he accompanied defendant and Hankton to the victim's apartment on the night in question, with the plan to rob the victim. Before breaking into the victim's apartment, the trio went to McDonald's and to a liquor store. The plan was for Hankton to kick the victim's door in, while Summers acted as a lookout by peering into the victim's windows to see where she was. After Hankton and defendant entered the apartment, defendant sent Summers a text message stating "we in here." Summers then went to the back door of the victim's apartment, where he assisted Hankton in removing items from the apartment. While at the back door, he observed the victim on the floor, while defendant beat her with a rifle and kicked her. Eventually, Summers and Hankton drove defendant's vehicle back to Summers' home, leaving defendant and the victim behind. Summers stayed at his home and did not have further contact with defendant or Hankton that night. The next day, defendant called Summers and told him that he had "f***ed up" the previous night by "bust[ing] [the victim's] head open and t[aking] half her ear off." These injuries were consistent with those the victim actually suffered. Summers testified that he never entered the apartment during the home invasion; he simply stood at the back door and assisted with removing items.

Defendant first argues that he was denied a fair trial when the trial court allowed, over his objection, evidence of his prior acts of domestic violence against the victim. We review a trial court's ultimate decision whether to admit evidence for an abuse of discretion, but review preliminary questions of law, such as whether a rule of evidence precludes admissibility, de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

The victim testified that defendant previously attacked her on two occasions, once around December 18, 2012, during an argument over another woman when defendant "choke slammed" the victim on to her bed and held her down by her throat, and once on January 11, 2013, wherein defendant repeatedly beat the victim about the face. Following this second incident, the victim obtained a PPO against defendant and forced him to move out. At that point, she believed "everything would be done." The trial court ruled that this evidence was admissible under MCL 768.27b, which provides:

> Except as otherwise provided in subsection (4) [which references acts occurring more than 10 years before the charged offense], in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible *for any purpose for which it is relevant*, if it is not otherwise excluded under Michigan Rule of Evidence 403. [Emphasis added.]

"The language of MCL 768.27b clearly indicates that trial courts have discretion 'to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403.' " *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011), quoting *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007).

Here, defendant was accused of, among other things, criminal sexual conduct, armed robbery, unlawful imprisonment, and AWIGBH against the victim, a "family or household member" with whom he had a previous dating relationship and with whom he had previously resided. See MCL 768.27b(5)(b). Each of the above-referenced charges constituted acts of domestic violence, as that term is broadly defined by the statute. MCL 768.27b(5)(a)(*i*)-(*iv*). Likewise, the prior acts clearly met the definition of domestic violence. Finally, the prior acts occurred within 10 years of the charged offenses as required by MCL 768.27b(4). Thus, the only question is whether the evidence was unfairly prejudicial under MRE 403. We find that it was not. The evidence was highly relevant to (1) giving the jury "a full and complete picture" of the relationship between defendant and the victim, *Cameron*, 291 Mich App at 610; (2) establishing defendant's identity as the perpetrator; (3) establishing defendant's motive; (4) establishing defendant's propensity for committing acts of domestic violence, as is permissible under MCL 768.27b, see *Cameron*, 291 Mich App at 612; and (5) bolstering the victim's credibility. Its probative value was not substantially outweighed by the danger of unfair prejudice, especially where the testimony was brief in comparison to the evidence regarding the charged offenses, see *People v Railer*, 288 Mich App 213, 220-221; 792 NW2d 776 (2010), and where the trial court "minimized the prejudicial effect of the bad-acts evidence" by instructing the jury that it was not to convict defendant solely because he was guilty of other bad conduct, *Cameron*, 291 Mich App at 612. There was no abuse of discretion.

Defendant next argues that the trial court engaged in judicial factfinding that increased his minimum sentences in violation of the Sixth and Fourteenth Amendments, as interpreted by the Supreme Court's recent decision in *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). We recently rejected this argument in *People v Herron*, 303 Mich App 392, 401-402; 845 NW2d 533 (2013), and we are bound by that holding. MCR 7.215(C)(2). Accordingly, this argument is without merit.

Defendant next raises several issues in his brief filed in propria persona pursuant to Supreme Court Administrative Order No. 2004-06, Standard 4.

Defendant first argues that he was denied a fair trial by prosecutorial misconduct after the prosecution elicited perjured testimony from Summers and failed to correct that testimony. Because this claim is not preserved, our review is for plain error affecting substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). The test for prosecutorial misconduct is whether defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). A prosecutor may not knowingly use false testimony to obtain a conviction, and must report and correct perjury committed by a government witness. *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009).

Defendant's claim is comprised of nothing more than his own unsupported assertion that Summers lied about his involvement and about what he saw. Defendant has failed to establish, with record evidence, that Summers in fact testified falsely or that the prosecution knew as much. See *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000) (defendant bears the burden of furnishing the reviewing court with a record to verify the factual basis for any argument supporting reversal). For instance, although defendant argues that Summers could not possibly have seen what he claimed to have seen while standing at the back door of the victim's apartment, two different police officers testified at trial that there was in fact a clear line of sight from the back door to the front of the apartment. Thus, depending on where the victim was lying on the living room floor when Summers was standing at the back door, he would have been "easily" able to view defendant assaulting her. Moreover, although defendant points to minor inconsistencies in Summers' testimony between the preliminary examination and trial, such inconsistencies do not establish that Summers committed perjury, or that the prosecutor was aware of any perjury. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). There was no plain error.

Defendant next raises a host of ineffective assistance of counsel claims. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We previously denied defendant's motion to remand on these claims, as well as his motion for reconsideration. *People v Vinson*, unpublished order of the Court of Appeals, entered July 25, 2014 (Docket No. 317778); *People v Vinson*, unpublished order of the Court of Appeals, entered October 3, 2014 (Docket No. 317778). Because no *Ginther*[1] hearing was held on the question of counsel's ineffectiveness, our review is limited to mistakes apparent on the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to counsel. US Const, Am VI; Const 1963, art 1, § 20. "[T]he right to counsel is the right

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-4-

to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that his defense counsel's performance was objectively deficient and (2) that the deficient performance prejudiced his defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Defense counsel is presumed to be effective, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), and this Court does not second guess counsel's judgment on matters of trial strategy, *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

Defendant claims that he was deprived of effective assistance of counsel by a conflict of interest on the part of his trial attorney. This claim is largely premised on defendant's contention that his attorney was biased against him, as apparently shown by numerous interactions between the two wherein defense counsel refused to believe defendant's version of the events, refused to discuss trial strategy, and ultimately employed a strategy that involved placing defendant at the scene of the home invasion, contrary to the version of events defendant gave to defense counsel. However, there is no evidence in the lower court record to support defendant's assertions, and they are precluded from our review. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (defendant has the burden of establishing the factual predicate for an ineffective assistance of counsel claim). Defendant has simply failed to demonstrate on the basis of the record before this Court that his trial counsel was ineffective because of a conflict of interest. In any event, when claiming ineffective assistance due to defense counsel's conflict of interest, a defendant must show that an actual conflict of interest adversely affected counsel's performance. *Strickland*, 466 US at 692 (quotation marks and citation omitted); *People v Smith*, 456 Mich 543, 556-557; 581 NW2d 654 (1998). Here, there is no evidence that a conflict of interest affected defense counsel's performance. Defense counsel presented a reasonable theory of defense given the overwhelming evidence supporting defendant's presence during the home invasion and his active participation in the charged offenses. That is, defense counsel attempted to establish that Summers was actually inside the apartment during the events in question, and that it was Summers and Hankton, rather than defendant and Hankton, who committed the charged offenses, while defendant was "merely present." The fact that this strategy was ultimately unsuccessful does not demonstrate that defense counsel was ineffective. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Moreover, the fact that defense counsel may have failed to adequately consult with defendant in advance of trial does not establish that defense counsel was ineffective where counsel had the authority to handle trial preparation. See *People v Carter*, 462 Mich 206, 218-219; 612 NW2d 144 (2000).

Defendant also claims that his trial counsel was ineffective for failing to adequately investigate the facts of the case, visit the crime scene, interview witnesses, or familiarize himself with the discovery materials. We disagree. Defense counsel has the duty to conduct a reasonable investigation into his client's case, and the failure to do so can amount to ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 52-55; 826 NW2d 136 (2012). At the outset, however, it is not apparent from the record that defense counsel in fact failed to do any of the things alleged above. To the contrary, the record from the first day of trial indicates that defense counsel had met with the prosecution numerous times before trial, had reviewed all of the evidence, including watching the videos and looking at the photographs, and, according to the prosecution, was "very prepared and organized to go on this case." Even assuming defense counsel failed as alleged, there is no reasonable probability that the outcome of defendant's trial

would have been any different because, as outlined above, the evidence against defendant was overwhelming and defendant has failed to identify how additional investigation or preparation would have aided his defense. *Pickens*, 446 Mich at 314.

Defendant next contends that his defense counsel was ineffective for failing to disclose all of the discovery materials to defendant, which affected defendant's ability to prepare for trial. Again, however, this claimed deficiency is not apparent from the record; "the record does not indicate what efforts defense counsel may have made to share the discovery materials with defendant, whether by providing him a personal copy of the materials or by conveying the substance of the information to defendant during discussions about the case." *People v Jackson*, 292 Mich App 583, 601; 808 NW2d 541 (2011). In any event, defendant cannot establish prejudice where he has failed to identify what he would have done differently had he been provided all the discovery materials and where it is clear that his defense counsel reviewed all of those materials and was well-prepared for trial.

Defendant contends that his defense counsel was ineffective for failing to object to "damaging" evidence. However, defendant does not elaborate what "damaging" evidence his trial counsel failed to object to, or why such evidence would have been excludable upon a proper objection. This Court is not required to discover and rationalize the basis for defendant's claim, and to search for authority in support of that claim. *Matuszak*, 263 Mich App at 59.

Defendant contends that his defense counsel was ineffective for failing to obtain his cellular telephone records, which, according to defendant, would have aided in his defense. Again, this claimed deficiency is not apparent from the record, and it is therefore precluded from our review. *Hoag*, 460 Mich at 6. In any event, defendant has failed to demonstrate prejudice. Defendant's sole argument is that his cellular telephone records would have shown that he was searching for a hospital sooner in time than what the victim testified to at trial. We fail to see how this evidence would have aided his defense against the charged crimes. There is thus no reasonable probability that the evidence would have affected the outcome of trial. *Pickens*, 446 Mich at 314.

Defendant further contends that his trial counsel was ineffective for failing to adequately review and utilize two "key" pieces of evidence at trial. The first was a "triangulation graph" of the cellular tower mapping data, indicating that defendant was near the victim's apartment at the time he sent the text message to Summers. According to defendant, the graph shows that he was not inside the victim's apartment at the time the message was sent, but rather in an area away from the apartment. The second piece of evidence was a photograph of the living room of the victim's apartment, taken from the back door, which, according to defendant, demonstrated that it was impossible for Summers to have seen what he claimed to have seen. At the outset, we reiterate that the record indicates that defense counsel reviewed all discovery material associated with defendant's case before trial. The fact that defense counsel did not utilize these exhibits in the manner defendant claims he should have was presumptively a matter of trial strategy that we will not second guess on appeal. *Horn*, 279 Mich App at 39. In any event, defendant cannot establish prejudice. Notwithstanding the triangulation graph, there was ample evidence placing defendant inside the apartment during the home invasion. Moreover, notwithstanding the photograph, there was ample evidence establishing that Summers in fact could have seen what he claimed to have seen. Finally, we note that both the triangulation graph and the photograph were

admitted into evidence and viewed by the jury. The jury thus had the opportunity to review that evidence and draw any conclusions it saw fit.

Defendant also contends that his trial counsel was ineffective for failing to move for suppression of his interview statement to Detective Conklin, wherein he denied being in Kalamazoo on the night in question, and also for later advising defendant not to speak with the prosecution or police to "explain" why he initially denied being present. Defendant has failed to provide any facts or authority to support that his statement would have been inadmissible if properly objected to, and we note testimony from Conklin at trial indicating that he gave defendant his *Miranda*[2] warnings at the outset of the interview; defendant waived those rights and agreed to speak with Conklin. There is thus no basis on the record for concluding that the statement would have been inadmissible, and defense counsel is not ineffective for failing to raise a meritless objection. *People v Snider*, 239 Mich App 393, 435; 608 NW2d 502 (2000). With respect to defense counsel's advice not to speak to prosecutors or police, it is not apparent from the lower court record that defense counsel gave defendant this advice, and this claim is precluded from our review. *Hoag*, 460 Mich at 6.

Finally, defendant claims that his trial counsel was ineffective for failing to allow defendant to testify at trial. The record belies this claim. Defendant did in fact testify, and denied committing any of the charged offenses. To the extent defendant argues that defense counsel should have asked more detailed questions, or allowed defendant to give a narrative explaining his side of the story, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *Horn*, 279 Mich App at 39. It was presumptively reasonable for defense counsel to refrain from asking further questions, so as to avoid eliciting incriminating testimony or opening the door to damaging cross-examination from the prosecution. This Court will not substitute its judgment for defense counsel on this matter. *Cline*, 276 Mich App at 637.

Affirmed.

/s/ Peter D. O'Connell
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).