# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ROSCOE RICO MARTIN,

       Defendant-Appellant.

UNPUBLISHED
June 2, 2015

No. 319400
Marquette Circuit Court
LC No. 12-050218-FH

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

A jury convicted defendant of extortion, MCL 750.213, finding that defendant sent two threatening letters to a prison official while defendant was confined at the Marquette Branch Prison. At the time, defendant was serving a 50 to 76 year sentence for a 1989 second-degree murder conviction. Defendant was sentenced as a habitual offender, MCL 769.10, to 7 to 30 years' imprisonment, to be served consecutively to a sentence he was serving when the extortion occurred. He now appeals as of right. Finding no errors warranting reversal, we affirm defendant's conviction and sentence.

## I. BASIC FACTS

Defendant was a prisoner confined to the Marquette Branch Prison when the instant offense occurred. Lincoln Marshall, an inspector at the Marquette Prison, testified that on May 2, 2011, he intercepted two extortion letters that were addressed to Gail O'Dell, who worked as a correctional officer at the prison. Marshall had alerted the mail room that all communications from prisoners to prison employees be forwarded to him as a matter of course. Marshall took particular interest in the letters because there was an "inquiry" into whether O'Dell had become overly familiar with some of the prisoners.[1] The letters were sealed in envelopes and marked "confidential" with no return address. The letters instructed O'Dell to send money to an address or the author would publicly accuse her of criminal activity. Marshall made copies of each letter and then sent the copied letters along to O'Dell to see if she would turn the letters in and to better assess the truth of the letter's allegations.

---

[1] The inquiry never became an "official investigation" and no misconduct was ever substantiated.

O'Dell testified that she received the letters alleging that she had set up a hit on an inmate who had been stabbed in the eye. The letters threatened to accuse her of setting up the stabbing if she did not send $10,000 to Gerald Lorence, an attorney in the Lower Peninsula. O'Dell took the letters to Marshall that same day and told him that she believed defendant had sent them. O'Dell's belief was based on similarities between the letters and another letter that she had previously received from defendant, where he accused her of having affairs with prisoners. She knew defendant wrote that letter because he asked her to retrieve it from the mail. O'Dell testified that she threw that first letter away without showing it to her superiors. She further testified that the next two letters were written in the same fashion as the first.

Michigan State Police Officer Todd Johnston interviewed defendant. Defendant admitted to Johnston that an address written inside an envelope flap found in his cell was his handwriting. This was important because the extortion letters had bragged about knowing the personal address of another prison employee and the written notation on the envelope found in defendant's cell was the same address.[2] Johnston also spoke with the attorney mentioned in the extortion letters. Defendant had contacted the attorney in 2009 to work on an appeal but they never entered into an attorney-client relationship because the attorney never received legal fees or records from defendant.

Defendant denied writing or sending the letters. Defendant testified that both Marshall and Johnston tried to enlist defendant as an informant for investigations involving prison employees and other inmates.[3] Defendant had multiple conversations with both Marshall and Johnston and, on more than one occasion, the officers took defendant on excursions, driving around the Upper Peninsula. Defendant did not want to become a "snitch" or "mole" because it was too dangerous; the risk of death was too great. He was eventually transferred to Baraga Prison. Defendant acknowledged that he corresponded with the attorney named in the extortion letters in 2009 or 2010, stating that he never hired the attorney and that the attorney wanted $2,000 for a retainer to work on his case.

Defendant's fingerprint was matched to a latent fingerprint on one of the envelopes. His DNA matched samples taken from the two envelope flaps. The DNA on the flaps was likely from bodily fluid, rather than from cellular debris (dead skin cells, etc.), because there was a large amount of DNA present on the flaps. The odds that the DNA profiles from the flaps would randomly match defendant's DNA profile were one in 1.5 quadrillion.[4]

---

[2] Johnston explained that the prison employee had lost his identification inside the prison.

[3] Both Marshall and Johnston denied ever attempting to get defendant to act as an informant. Defendant also accused the prosecutor of being part of the conspiracy.

[4] The expert testified that it would take 214,000 Earths to have 1.5 quadrillion people, so randomly matching the envelope would be like randomly going to one of the 214,000 Earths, randomly picking one person, and having that person's DNA profile match the DNA profile from the envelope.

The jury found defendant guilty of extortion and he was sentenced to 7 to 30 years' imprisonment. He now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant's claim that the evidence was insufficient to support an extortion conviction is twofold. First, he argues that there was no factual basis for the conviction. Second, he argues that the evidence was legally insufficient and that, at most, defendant was guilty of attempted extortion. We disagree.

The extortion statute, MCL 750.213, states as follows:

> Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense, or shall orally or by any written or printed communication maliciously threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do or refrain from doing any act against his will, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Our Supreme Court recently provided the following analysis regarding the requirements of MCL 750.213:

> According to the plain language of the statute, the crime of extortion is complete when a defendant (1) either orally or by a written or printed communication, maliciously threatens (2) to accuse another of any crime or offense, *or* to injure the person or property or mother, father, spouse or child of another (3) with the intent to extort money or any pecuniary advantage whatever, *or* with the intent to compel the person threatened to do or refrain from doing any act against his or her will. [*People v Harris*, 495 Mich 120, 128-129; 845 NW2d 477 (2014).]

## A. FACTUAL CHALLENGE

"A claim of insufficient evidence is reviewed de novo, in a light most favorable to the prosecution, to determine whether the evidence would justify a rational jury's finding that the defendant was guilty beyond a reasonable doubt." *People v McGhee*, 268 Mich App 600, 622; 709 NW2d 595 (2005). All factual conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, modified on other grounds 441 Mich 1201 (1992). "[T]he issue of credibility is for the jury to decide and we will not resolve credibility issues anew on appeal." *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Thus, this Court "is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Defendant points to "mitigating" evidence that created a "reasonable doubt" whether defendant committed the crime of extortion. For example, he contends that he could not have

known details about the Upper Peninsula had he not been driven around by the authorities when they were attempting to get him to act as an informant. He also points to the fact that his typewriter ribbon was missing from his cell and that there was confusion as to whether and how Marshall created duplicate envelopes when he sent the letters on to O'Dell. Defendant argues that another prisoner could have borrowed envelopes from defendant that contained defendant's DNA and fingerprints and that defendant was not necessarily the only person who knew of the attorney in the Lower Peninsula. Defendant further points to the lack of video evidence showing him depositing anything in the mailbox.

Defendant's argument is simply an effort to have this Court reweigh the evidence and make credibility determinations in his favor. Defendant's argument at trial was that he did not write or send the letters and that he was subjected to a false accusation that was made for the purpose of coercing him into become an informant. The jury, having convicted defendant of extortion, necessarily determined that the investigators, correctional officers, police officers, and forensic pathologists were credible and that defendant was not. This Court may not interfere with the jury's credibility determination. *Nowack*, 462 Mich at 400; *Milstead*, 250 Mich App at 404.

A rational jury could conclude from the trial testimony that defendant was guilty of extortion. Defendant had sent O'Dell a letter in the past. There was DNA evidence connecting defendant to the envelopes. Additionally, defendant admitted that he had been in contact with the attorney mentioned in the extortion letters. Accordingly, the evidence, viewed in the light most favorable to the prosecution, was sufficient to support defendant's conviction.

## B. LEGAL CHALLENGE

Defendant argues that his conduct did not satisfy the extortion statute because Marshall intercepted the extortion letters before they reached the intended victim and it was Marshall – not defendant – who passed the letters along to O'Dell. Defendant rests his argument on the statutory requirement that there be "a written or printed *communication*," MCL 750.213, arguing that for there to be a "communication" the person who is being communicated with has to receive the communication. Defendant asserts that when Marshall, for his own purposes and not for the purpose of assisting in the commission of a crime, tested O'Dell by sending copies of the messages in retyped envelopes, this was a completely different and separate action. Defendant argues that the extortion crime was prevented when the letters were intercepted (and O'Dell was unaware of their existence), and that defendant is at most guilty of attempted extortion. We disagree.

This Court reviews de novo issues of statutory interpretation. *People v Hrlic*, 277 Mich App 260, 262; 744 NW2d 221 (2008).

At issue here is the definition of "communication," which is not statutorily defined in MCL 750.213. "The purpose of statutory interpretation is to determine the Legislature's intent. To do so, this Court examines the plain and ordinary language of the statute. If the statute's plain and ordinary language is not ambiguous, we must enforce the statute as written." *People v Baldes*, ___ Mich App ___; ___ NW2d ___ (Docket No. 320460, issued March 17, 2015), slip op, p 2 (internal citations omitted). "[W]hen terms are not expressly defined by a statute, a court

may consult dictionary definitions." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). Black's Law Dictionary defines "communication" as "1. The expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception. 2. The information so expressed or exchanged." Black's Law Dictionary (9th ed), p 316. Random House Webster's Unabridged Dictionary (2d Ed), p 414 defines "communication" as "1. the act or process of communicating; fact of being communicated. 2. the imparting or interchange of thoughts, opinions, or information by speech, writing, or signs. 3. something imparted, interchanged, or transmitted. 4. a document or message imparting news, views, information, etc."

Here, the prosecution was required to prove that defendant, by a written or printed communication, maliciously threatened to accuse O'Dell of a crime with the intent to extort money. The statute does not require that a defendant actually communicate the threat to the victim. Rather, it requires "*a* written or printed communication," i.e., a written or printed "message" or "expression" of the threat. Even accepting defendant's argument that "communication" requires both the declaration of a threat and the perception and comprehension of that threat, there is nothing in the plain language of the statute requiring that the threat be understood by only the targeted victim; rather, it is enough that *someone* perceived the threat. Here, that individual was Marshall. The letters in the instant case were clearly a printed message that communicated a threat; as such the elements of extortion were satisfied. Accordingly, defendant's argument fails because the threat does not need to be received by the intended target to be a "communication" pursuant to MCL 750.213. That Marshall first read the letters is of no consequence.[5]

Moreover, even if we were to accept defendant's theory that the target of extortion must actually receive the threat, O'Dell, in fact, received defendant's letters, albeit copies of the originals. Defendant excuses his criminal conduct by arguing that it was Marshall who actually sent the letters. Defendant provides an analogy with malicious destruction of property: If a defendant throws a brick towards a window with the intent to break the window, but a policeman catches the brick before it hits the window, there is only attempted malicious destruction of property. If the next day the police officer decides to throw the same brick (which he saved) through the window the "undersigned doesn't believe anyone could say the defendant is somehow responsible for the police officer's actions."

"Where an independent act of a third party intervenes between the act of a criminal defendant and the harm to a victim, that act may only serve to cut off the defendant's criminal

---

[5] We find further support in *People v Markham*, unpublished opinion per curiam of the Court of Appeals, issued December 11, 2012 (Docket No. 303734), slip op, pp 3-5, wherein a panel of this Court concluded that threats posted on a defendant's website would satisfy a communication under the extortion statute because direct communication of a threat is not required. "Although unpublished opinions of this Court are not binding precedent . . .they may, however, be considered instructive or persuasive." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145; 783 NW2d 133 (2010).

liability where the intervening act is the sole cause of harm." *People v Bailey*, 451 Mich 657, 677; 549 NW2d 325 amended on denial of reh 453 Mich 1204 (1996). "In assessing criminal liability for some harm, it is not necessary that the party convicted of a crime be the sole cause of that harm, only that he be a contributory cause that was a substantial factor in producing the harm. The criminal law does not require that there be but one proximate cause of harm found. Quite the contrary, all acts that proximately cause the harm are recognized by the law." *Id.* at 676.

The "intervening cause" theory is not helpful to defendant. To the extent O'Dell suffered "harm" in reading the letters, defendant was the primary cause of that harm. The prosecution presented sufficient evidence to support defendant's extortion conviction.

### III. RIGHT TO PRESENT A DEFENSE

Defendant argues that he was denied the right to present a defense when the trial court: 1) denied his motion to hire an expert to examine defendant's typewriter; 2) denied defendant's motion to hire a handwriting expert; and 3) granted the prosecution's motion in limine to prevent defendant from calling a number of Department of Correction (MDOC) witnesses.

"This Court reviews for abuse of discretion a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert witness." *People v Carnicom*, 272 Mich App 614, 616; 727 NW2d 399 (2006). Likewise, this Court reviews a trial court's decision to exclude evidence for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id*.

"Evidentiary error does not require reversal unless after an examination of the entire cause, it appears more probable than not that the error affected the outcome of the trial in light of the weight and strength of the properly admitted evidence." *People v Benton*, 294 Mich App 191, 199; 817 NW2d 599 (2011).

### A. EXPERT WITNESS FEES

Defendant sought to retain defense experts at public expense. Defendant wanted an expert in typewriter comparison to analyze whether or not these letters could have been generated by defendant's typewriter.[6] Defendant also wanted a handwriting expert to analyze handwritten notes on the outside of the envelopes to help determine when and by whom they were made.

---

[6] While the prosecution argues that test results ultimately concluded that defendant's typewriter was likely the one used to write the extortion letters, this alleged fact does not apply to our analysis of the issue because the fact was not known to the trial court at the time it made its decision.

The trial court provided a detailed explanation for its decision to deny defendant's motion, as follows:

Well, first, as to the request for expert witnesses, under . . . MCL 775.15, the Court does have discretion to fund expert witnesses, provided that the indigent defendant is able to show there is a material witness in his favor, without whose testimony he cannot safely proceed to trial. And certainly Mr. Martin, being an inmate with the Department of Corrections, is indigent. However, the appointment of an expert witness, or authorizing retention of an expert witness at public expenses, is discretionary with the Court under *People versus Jacobson* at 448 Mich 639. And the defendant must demonstrate a nexus or connection between the facts of the case and the need for an expert.

Now, in this case, although it sounds like the prosecution does not dispute that a typewriter ribbon or typewriter may have been taken from Mr. Martin's cell, I'm hearing no connection between that typewriter and the ribbon to any evidence the People intend to prove in this case. Now – Nor do the People intend to call, at least as Mr. Griffin says, any expert witness connecting up either the typewriter or the typewriter ribbon with this case. So recognizing this is a discretionary call, I'm going to deny the motion for funds to retain a typewriter or typewriter ribbon expert.

Now, in the event this case proceeds on to trial, and the People call in any – or offer any evidence related to the typewriter ribbon, any opinion evidence, that in that event, I would certainly consider a mistrial, if the defendant is not expected to meet any of that evidence. Now, having said that, if the People intend to offer simply factual evidence that – and I don't know if these letters at issue were typed or not, but if they intend to offer into evidence the fact that a typewriter was removed from Mr. Martin's cell, and no opinion evidence is offered that these items were written on that particular typewriter, I don't regard that fact evidence, that Mr. Martin had access to a typewriter, to be opinion evidence that would call for any kind of expert testimony. And with that understanding, I'm going to deny the defense motion for retention of a typewriter or ribbon expert.

In terms of the handwriting expert analysis, apparently the question goes to how – what I'll call, for lack of a better term, in-house mail is handled within the prison system, how it is processed. That again does not seem to me to fall within the ambit of expert opinion testimony of handwriting identification as much as it does the process by which mail is processed, both in-house mail or outside mail coming in. And it seems to me that does not fall within the realm of expert opinion testimony. And in terms of the need for such testimony, to somehow or another, by way of a handwriting opinion, that the investigating – Department of Corrections Investigator Lincoln Marshall somehow or another is lying in his preliminary exam testimony, other than the boldfaced assertion that he is lying. I don't have – I don't find evidence here that, in the exercise of discretion, would show a handwriting expert is necessary for the defendant to

safely proceed to trial. Nor does it sound like the People intend to offer any handwriting expert analysis opinion as part of their case in chief.

So in the exercise of discretion, I'm going to deny the defense motion for funds to retain either a typewriter or typewriter ribbon expert, or a handwriting expert in this case.

The trial court properly exercised its discretion in ruling that there was not a sufficient showing by defendant to justify public expenditures. The prosecution was not going to offer any testimony related to the typewriter or the ribbon used on it. Defendant asked for funds to hire an expert in typewriters but offered nothing more than speculation that the expert might find something helpful. As the trial court recognized, there was no "nexus between the facts of the case and the need for an expert," and there was no indication that a typewriter expert would "likely benefit" the defense. *People v Jacobsen*, 448 Mich 639, 641; 532 NW2d 838 (1995) ("Without an indication that expert testimony would likely benefit the defense, it was not error to deny without prejudice the motion for appointment of an expert witness."). Likewise, there was no indication that a handwriting expert would "likely benefit" the defense. Accordingly, the trial court did not abuse its discretion when it denied defendant's request for a court-appointed typewriter expert and a court-appointed handwriting expert.

Moreover, even if this Court were to assume that the trial court abused its discretion in regard to either denial, defendant cannot show that the alleged error makes it "more probable than not" that the error affected the outcome. *Benton*, 294 Mich App at 199. As previously discussed, there was a substantial amount of compelling evidence presented in this case, much of it scientific, to support the jury's verdict.

### B. MDOC WITNESSES

Defendant's witness list included 18 MDOC officers who worked at the Marquette Prison; the list included seven "food stewards," three people who worked as medical or dental personnel, and one prisoner. The prosecution filed a motion in limine, requesting that the defense be prohibited from calling these witnesses. The trial court granted plaintiff's motion in limine with a few exceptions:

Now, I'm going to grant the motion in limine that – with the exception of Sergeant Buckner, and any other MDOC employees that are identified in Detective Lieutenant Johnston's report. Other than those officers or employees that are identified in the report, as to the remainder of the list of MDOC employees I've listed, I'm going to grant the People's motion in limine that such witnesses not be called unless the defendant makes some pretrial proffer in writing of the expected testimony of such witnesses and the relevancy of that testimony to the issues in this case, and in light of my ruling on the motion in limine, that the underlying conduct of the corrections officer, if any exist that would be a law or rule violation, is not relevant to a jury determination. If, however, any of these proposed MDOC witnesses contain exculpatory evidence as to the defendant not being the author of this correspondence, or somehow or another would provide and assist the defense in his defendant [sic] other than the

underlying conduct issue of which the jury is not going to hear any evidence, that these witnesses are not going to be – that the Court will not have them called or subpoenaed unless there is an offer of proof showing some relevancy to the issues the jury has to determine in this case.

Defendant's contention that the trial court abused its discretion is without merit. Defendant argues the trial court mistakenly assumed that the only reason for calling these witnesses would be to prove the truth of the underlying accusation as some kind of "legal defense" to the charge of extortion. However, the record reveals otherwise. It did agree that the "truth" of the accusation is not a defense to extortion, and that evidence that the underlying accusation was true would not be admissible for such a purpose. However, the trial court also clearly understood and addressed defendant's argument that this evidence was relevant to show that there was some type of plot against defendant:

> Now, I understand, in part from earlier arguments of counsel and some of the pro se communications of defendant, that Mr. Martin's position is that he is not the author of these items of correspondence, that somebody else is the author, and he's somehow or another being framed, and that the truth of the underlying offense would go to the motivation I suppose of those who are trying to frame him. On these discovery motions, I see no evidence of that, and to open up that line of inquiry, either argument, or examination of witnesses, or cross-examination of witnesses at trial, on the basis of unsigned and anonymous kites that, as Inspector Marshall said, go on all the time within prison, would lead us to a trial of innuendo and rumor, and as it relates to people employed in their work as Corrections Officers, and would have no relevancy that I can see as to whether or not the elements of the statute are proven up, and whether or not the defendant is the author of these items of correspondence.

The trial court did not abuse its discretion when it denied defendant's request for a court-appointed typewriter expert and court-appointed handwriting expert. The trial court also did not abuse its discretion when it denied defendant's request to call a number of MDOC witnesses.

IV. SENTENCING ISSUES

Defendant argues that offense Variable (OV) 19 (threat to security of penal institution) was improperly scored because there was no element of the extortion offense that required a threat to the security of a penal institution and there was no testimony of a particular threat to security. He further asserts the trial court invaded the province of the jury in scoring OV 19. We disagree.

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013) (footnotes containing citations omitted).]

A score of 25 points for OV 19 is appropriate when "the offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49(a). Here, defendant sent two letters to O'Dell threatening to accuse her of criminal activity unless she paid an attorney $10,000.00. Defendant essentially attempted to persuade a correctional officer to do his bidding. Such an act could affect the officer's judgment and could potentially lead to a very severe threat to the security of the facility. In essence, as discussed during sentencing, the officer could end up "on the payroll" of an inmate. Threatening a guard in this manner fits squarely within threatening the security of the Marquette Prison. Accordingly, the trial court properly scored OV 19 at 25 points.

Contrary to defendant's assertions, the facts used in scoring the offense variables do not need to be proven beyond a reasonable doubt before the jury. "While judicial fact-finding in scoring the sentencing guidelines produces a recommended range for the minimum sentence of an indeterminate sentence, the maximum of which is set by law, [*People v*] *Drohan*, 475 Mich [140] at 164, 715 NW2d 778 [2006], it does not establish a mandatory minimum; therefore, the exercise of judicial discretion guided by the sentencing guidelines scored through judicial fact-finding does not violate due process or the Sixth Amendment right to a jury trial." *People v Herron*, 303 Mich App 392, 403-404; 845 NW2d 533 (2013), application held in abeyance ___ Mich ___; 846 NW2d 924 (2014).

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant's brief consists of a lengthy string of legal principles and citations that cover nearly every area of criminal law and lists several standards of review. Defendant does not discuss the proceedings that occurred below or attempt to apply any of the legal principles he cites to the instant case. In other words, defendant has not provided anything in his argument sections for this Court to review. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Nevertheless, we will try to address defendant's arguments.

### A. PROSECUTORIAL ERROR

"To prevail on a claim of prosecutorial error, a defendant, in general, must demonstrate that he or she was denied a fair and impartial trial." *People v Bosca*, ___ Mich App ___; ___ NW2d ___ (Docket No. 317633, issued March 26, 2015), slip op, p 11 (internal citations omitted).

Defendant writes: "The prosecutor acted in bad faith intentionally, just to get a conviction, where his evidence didn't support his made up lies, he tried to sculpt to be fact knowing they were false and very whimsical and it came down to a credibility contest, the prosecutor's comments were prejudicial to me, the defendant, receiving a fair trial where the jury now may have took into consideration the comments of the prosecution in making their verdict." It is true that "[a] prosecutor's role within our judicial system is to seek justice and not merely to convict." *People v Meissner*, 294 Mich App 438, 455; 812 NW2d 37 (2011). However, we are at a loss for how to analyze this alleged claim of error. Defendant's brief provides no guidance.

## B. JURY INSTRUCTIONS

During deliberations, the jury sent a note to the trial court that stated "we would like the date of the shakedown and when they took the typewriter" and "Marshall's testimony." In response, the trial court allowed Marshall's testimony to be played back for the jury. As to when the shakedown and confiscation occurred, the court, the prosecution, and defendant's counsel recognized that defendant testified that his typewriter was taken on April 27th, and that either Marshall or Johnston testified that the typewriter was taken on May 2nd or 3rd. Given this conflict in the testimony, the court decided that it would be improper to provide a definitive answer to the question, and instead instructed the jury that he could not answer with a specific date and that the jury was to "rely on your own individual memories of the trial."

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995)

> The trial court's authority to comment on the evidence encompasses the power to summarize the evidence relating to the issues, call the jury's attention to particular facts and point out the important testimony so as to lead the jury to an understanding of its bearings. The trial court's comments must be fair and impartial and the court should not make known to the jury its own views regarding disputed factual issues, the credibility of witnesses, or the ultimate question to be submitted to the jury[.] [*People v Anstey*, 476 Mich 436, 453-54; 719 NW2d 579 (2006) (internal quotation marks and citations omitted).]

Contrary to defendant's assertions, the judge did not "foreclose the possibility of the jury rehearing the testimony in order to help them remember and understand it and to aid them in resolving [] disagreements . . ." The jury did not request when Marshall said he confiscated the typewriter; instead, they asked for "the date of the shakedown and when they took the typewriter." The trial court correctly recognized that it could not answer that question because there was conflicting testimony as to when these events occurred. The "important information" (when Marshall said he confiscated the typewriter) was not kept from the jury by the trial court's ruling, because Marshall's testimony containing this information was in fact replayed for the jury.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant writes that "[i]t is clearly factual and blatant that counsel failed to protect me, his client, by failing to object to erroneous and prejudicial bias actions of the judge and prosecutor." Because we have found no errors, it cannot be said that defense counsel was ineffective in failing to object to the alleged claims of error. "[D]efense counsel is not required to make frivolous or meritless motions . . . or objections." *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto