# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOANNE THERESA ALICE-KNIGHT,

Defendant-Appellant.

UNPUBLISHED
July 28, 2015

No. 320835
Wayne Circuit Court
LC No. 13-010633-FH

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of second-degree home invasion, MCL 750.110a(3), and larceny in a building, MCL 750.360. Defendant was sentenced, as a habitual offender, third offense, MCL 769.11, to 57 months to 30 years' imprisonment for her second-degree home invasion conviction and to a concurrent sentence of 1 to 8 years' for her larceny in a building conviction. For the reasons set forth in this opinion, we affirm.

## I. FACTS

Tammie and Bill Hinson lived in a house in Trenton with their two children. Tammie hired defendant as a "fill in" babysitter sometime in August 2013. One day when defendant was babysitting, Bill told defendant that he and defendant would go through a black box of costume jewelry together after his mother had an opportunity to go through the box. The Hinson's kept the box in the attached garage. Tammie kept her wedding ring in a jewelry box in her bedroom.

Around the second week of September, 2013, Tammie stopped using defendant's services as a babysitter because Tammie's regular babysitter was able to begin babysitting again. Shortly thereafter, defendant sent a text message to Tammie to see if Tammie needed a babysitter. Tammie declined the offer. Three days later, on October 21, 2013, Tammie left her house at 7:40 a.m. Bill left a short time later and was the last person to leave the house. According to Tammie, Bill forgot to lock the front door of the house. Tammie and Bill did not give permission to anyone to either enter their house or to take anything from their house.

Rhonda Conciello, who lives across the street from the Hinson's home, testified that she saw defendant drive her red Ford Escape into the Hinson's driveway on October 21, 2013. According to Conciello, defendant got out of her vehicle, walked to the Hinson's front door and entered the home. Ten minutes later, defendant exited the home and drove away.

-1-

Tammie testified that on October 22, 2013, she noticed that the black box of costume jewelry and her wedding ring were missing. Tammie called Conciello to see if she saw anyone near the house. After speaking with Conciello, Tammie called the police.

After speaking with Tammie, Bill decided to go to defendant's house. He knocked on the door to defendant's home and defendant's father, Edward Alice, answered the door. Bill told Edward that defendant stole a black box of jewelry. He spoke with Edward for four or five minutes and then defendant came outside. Bill told defendant, "I want my black box of jewelry right now." Defendant went to the back of her Ford Escape and brought Bill the box of jewelry. Bill asked defendant about Tammie's wedding ring, but defendant said that she did not have it. Tammie's wedding ring was not located.

Trenton Police Officer Michael Oakley spoke with defendant over the telephone. According to Oakley, defendant admitted that she entered the Hinson's home and took the black box of costume jewelry. Defendant stated that the Hinson's were not home and that she did not have permission to enter the house.

Defendant was convicted and sentenced as set forth above. Thereafter, the trial court denied defendant's motion for resentencing. This appeal ensued.

## II. ANALYSIS

Defendant first argues that she was denied a fair trial when the trial judge pierced the veil of judicial impartiality during the testimony of a witness. Because defendant did not raise a claim of judicial bias in the trial court, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A criminal defendant is entitled to a "neutral and detached magistrate." *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). A defendant claiming judicial bias must overcome "a heavy presumption of judicial impartiality." *Id*. at 598. In general, this Court applies the following analysis to determine whether a trial court's comments or conduct deprived the defendant of a fair trial:

> Michigan case law provides that a trial judge has wide discretion and power in matters of trial conduct. This power, however, is not unlimited. If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed. The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial. [*Id*. (quotation marks and citations omitted).]

Stated differently, "[t]he test is whether the judge's questions and comments may have unjustifiably aroused suspicion in the mind of the jury concerning a witness'[s] credibility and whether partiality quite possibly could have influenced the jury to the detriment of the defendant's case." *People v Cheeks*, 216 Mich App 470, 480, 549 NW2d 584 (1996).

At trial, the following exchange occurred during defense counsel's examination of defense witness Matthew Alice, defendant's brother:

[*Defense Counsel*]: All right. Good. Was there ever a conversation that you were either a party to, or sitting there listening to, between Mr. Hinson and [defendant], regarding that black box?

[*Matthew*]: Yes, I was.

[*Defense Counsel*]: Okay. Now, when we're talking about - -

[*Trial Court*]: Now, counsel - -

[*Defense Counsel*]: Black box - -

[*Trial Court*]: This is hearsay, unless you use it as an out of court statement.

It's not under oath. We're in the trial.

You didn't ask Mr. Hinson about any such statement.

[*Defense Counsel*]: I did ask him about conversations he had with [defendant].

[*Trial Court*]: But you did not make it particular enough so we would know whether he was, this person was there or not.

[*Defense Counsel*]: I see.

[*Trial Court*]: Okay?

So, I'm gonna ask you both to approach.

\* \* \*

[*Trial Court*]: There was an objection, is that correct?

[*Prosecutor*]: Yes.

[*Trial Court*]: I'll have to sustain the objection.

[*Defense Counsel*]: All right.

[*Trial Court*]: Do you want to ask another question, other than what somebody else might have said, who was not under oath, during the trial?

\* \* \*

-3-

[*Defense Counsel*]: Okay. All right. Now, the conversation, without getting into detail, was about the box and the contents?

[*Trial Court*]: Excuse me. Excuse me.

That's stricken. The jury's told to disregard it.

[*Defense Counsel*]: Okay.

I have no more questions, Your Honor.

While a court should exercise discretion so as not to appear to be substituting itself as counsel for either party, and while it is generally best-served when hearsay objections are left to the discretion of the attorneys, here, the court's interruption of defense counsel's examination did not pierce the veil of judicial impartiality. As noted, the trial court "has wide discretion and power in matters of trial conduct." *Jackson*, 292 Mich App at 598. The trial court indicated that it would not allow defense counsel to inquire about the conversation between defendant and Bill regarding the jewelry because it was hearsay. Then, when defense counsel asked Matthew about the conversation again, the trial court prevented defense counsel from asking the question it had already ruled on and had the question stricken from the record. In doing so, the trial court utilized its broad discretion with respect to matters of trial conduct. *Id*. This conduct was not of such a nature that it unduly influenced the jury, unjustifiably aroused suspicion concerning Matthew's credibility, or influenced the jury to the detriment of defendant's case. Rather, the trial court sua sponte made legal rulings on the admissibility of evidence and defendant has failed to overcome the "heavy presumption of judicial impartiality."[1] *Id*.

Defendant next argues that there was insufficient evidence to support her convictions. A defendant's challenge to the sufficiency of the evidence is reviewed de novo on appeal. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether a reasonable trier of fact could find that all of the essential elements of the crime were proven beyond a reasonable doubt. *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of the crime. *Carines*, 460 Mich at 757.

Defendant contends that there was insufficient evidence to support her convictions because the prosecution failed to prove that she intended to permanently deprive Bill and Tammie of their property.

To sustain a conviction of second-degree home invasion, the prosecutor was required to prove beyond a reasonable doubt that defendant: "(1) entered a dwelling, either by a breaking or

---

[1] Given our resolution of this issue, defendant's argument that trial counsel was ineffective in failing to raise a judicial bias objection is devoid of merit. See *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004) ("[c]ounsel is not required to raise meritless or futile objections.")

without permission, (2) with the intent to commit a felony or a larceny in the dwelling." *People v Nutt*, 469 Mich 565, 593; 677 NW2d 1 (2004). The elements of larceny in a building are:

> [1] an actual or constructive taking of goods or property; [2] a carrying away or asportation; [3] the carrying away must be with a felonious intent; [4] the goods or property must be the personal property of another; [5] the taking must be without the consent and against the will of the owner; and [6] the taking must occur [within] the confines of the building). [*People v Sykes*, 229 Mich App 254, 278; 582 NW2d 197 (1998).]

"The felonious intent required for larceny . . . is an intent to permanently deprive the owner of his property." *People v Pratt*, 254 Mich App 425, 427–428; 656 NW2d 866 (2002) (quotation marks and citations omitted). "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001).

In this case, a rational trier of fact could have inferred that defendant intended to permanently deprive the Hinson's of the box of jewelry. Evidence was presented that defendant previously babysat for the Hinson's during which time Bill showed her the box of jewelry. Defendant then arrived at the Hinson's home one morning after the home had been vacated and a neighbor observed her walk into the house and exit 10 minutes later. Defendant did not previously communicate with Tammie or Bill that she would be coming over to take the black box of costume jewelry. Rather, defendant waited for Tammie, Bill, and the Hinson children to leave the house before taking the box. Additionally, defendant placed the box in her vehicle and only returned the box when Bill confronted her the next day. Because a rational trier of fact could infer defendant's intent from the act, means, or the manner employed to commit the second-degree home invasion and the larceny in a building, there was sufficient evidence to prove that defendant intended to permanently deprive the Hinson's of the jewelry.

Defendant contends that she did not have the intent to deprive Tammie and Bill of their property because she returned it to Bill. However, it is no defense to a criminal charge containing an element of larceny that the property was subsequently recovered. The return of the property does not absolve defendant of the criminal consequences of her acts, as a crime involving larceny is complete once a taking has been accomplished. *People v Chappelle*, 114 Mich App 364, 369; 319 NW2d 584 (1982), overruled in part on other grounds *People v Bearss*, 463 Mich 623; 625 NW2d 10 (2001).

Next, defendant contends that the trial court erred in scoring Offense Variable (OV) 9 (number of victims) at 10 points.

A sentencing court's factual determinations under the sentencing guidelines must be supported by a preponderance of the evidence and the findings are reviewed for clear error on appeal. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Application of the facts to the law involves a question of statutory interpretation, which is reviewed de novo. *Id*.

MCL 777.39 governs the scoring of OV 9 and directs a trial court to assess 10 points when, during commission of the sentencing offense, "[t]here were 2 to 9 victims who were

placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." Relevant to this case, the statute directs the court to "[c]ount each person who was placed in danger of . . . loss of . . . property as a victim." MCL 777.39(2)(a).

In assessing 10 points for OV 9, the trial court found that during defendant's commission of the sentencing offense—i.e. second-degree home invasion—Tammie, Bill and the two Hinson children were in danger of loss of property. Defendant argues this was error because children cannot own property for purposes of OV 9 and because only Bill and Tammie were placed in danger of property loss given the circumstances of the case. Defendant's argument lacks merit.

MCL 777.39 does not delineate between adults and children; rather, the statute uses the term "person" to define a victim. The statute directs the court to "count each *person*" who was in danger of loss of property as a victim (emphasis added). In this case, the evidence showed that at the time defendant entered the Hinson home she had unfettered access to the possessions of each of the four occupants of the home. There was nothing to stop defendant from taking the Hinson children's possessions; therefore, the children, in addition to Bill and Tammie, were in danger of loss of property during commission of the offense. Accordingly, the trial court did not clearly err in assessing 10 points for OV 9.[2]

Defendant next raises a Sixth Amendment challenge to her sentence by arguing that the trial court engaged in improper fact-finding in scoring OV 9 in violation of the rule set forth in *Alleyne v United States*, 570 US___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). However, in *People v Herron*, 303 Mich App 392, 404; 845 NW2d 533 (2013), a panel of this Court held that *Alleyne* does not implicate Michigan's indeterminate sentencing scheme. Thus, irrespective of whether we agree with defendant's Sixth Amendment argument, we are bound by the holding in *Herron* and defendant's argument therefore fails as a matter of law.[3] MCR 7.215(J)(1).

Finally, defendant contends that she was sentenced on inaccurate information because the trial court referenced conduct in an unrelated proceeding and stated that she was "probably looking like a drug addict."

A defendant has a right to the use of accurate information at sentencing. *People v Hoyt*, 185 Mich App 531, 533; 462 NW2d 793 (1990). However, due process does not require courts

---

[2] Given our resolution of this issue, defendant's argument that trial counsel was ineffective in failing to object to the scoring of OV 9 is devoid of merit. See *Moorer*, 262 Mich App at 76 ("[c]ounsel is not required to raise meritless or futile objections.")

[3] We note that at the time this opinion was authored, our Supreme Court granted the defendant leave to appeal in *People v Lockridge*, 304 Mich App 278, 285; 849 NW2d 388 (2014), lv granted 496 Mich 852 (2014) to address whether a judge's scoring of the sentencing guidelines runs afoul of *Alleyne*, 570 US at ___. In *People v Herron*, 303 Mich App 392; 845 NW2d 533 (2013), lv pending ___Mich___; 846 NW2d 924 (2014) leave was held in abeyance pending the resolution of *Lockrdige*. Defendant has preserved her Sixth Amendment argument for review and is free to apply to our Supreme Court for leave to appeal. See MCR 7.302.

to follow the rules of evidence during sentencing. *People v Uphaus*, 278 Mich App 174, 183; 748 NW2d 899 (2008). Rather, "a sentencing court is afforded broad discretion in the sources and types of information to be considered when imposing a sentence, including relevant information regarding the defendant's life and characteristics." *People v Albert*, 207 Mich App 73, 74; 523 NW2d 825 (1994).

At sentencing, the trial court indicated that it perceived defendant as "looking like a drug addict" in another unrelated matter and noted that defendant "nodded off" during the trial in this case. It was not improper for the trial court to use its personal perception of defendant at an unrelated proceeding because the trial court was not bound by the rules of evidence at sentencing. *Uphaus*, 278 Mich App 174, 183. Further, the trial court was allowed to consider its perceptions of defendant at prior proceedings because "a sentencing court is afforded broad discretion in the sources and types of information to be considered when imposing a sentence, including relevant information regarding the defendant's life and characteristics." *Albert*, 207 Mich App at 74. Additionally, the court's reference to drugs was based on information contained in the PSIR. Defendant was afforded the opportunity to rebut the accuracy of the information contained in the PSIR, but failed to do so. *Uphaus*, 278 Mich App at 184. Because a PSIR is presumed to be accurate and may be relied on by the trial court, *Callon*, 256 Mich App at 334, defendant was sentenced on accurate information and she is not entitled to resentencing.

Affirmed.


/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello