# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAY ALLEN SCHLENKERMAN,

Defendant-Appellant.

UNPUBLISHED
July 28, 2015

No. 320501
Wayne Circuit Court
LC No. 13-004247-FH

Before: SAWYER, P.J., and DONOFRIO and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right from jury-based convictions of operating a vehicle while intoxicated, third offense (OWI-3), MCL 257.625(1), (9)(c), third-degree fleeing and eluding, MCL 257.602a(1), (3), and operating a motor vehicle with license suspended (OWLS), MCL 257.904(3)(b). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to concurrent terms of 78 to 120 months for OWI-3 and third-degree fleeing and eluding, and 6 to 12 months for OWLS. We affirm.

## I. FACTUAL BACKGROUND

The convictions arose out of a stop by police in Brownstown Township. Defendant testified that he had been to the Detroit Tigers opening game in 2013 and had about 12 or 13 beers at various bars. However, he claimed not to have been driving his truck on the way home; instead, the driver was a girl named "Lisa," whom he had met at a Detroit bar. Officer Morrison of the Brownstown Township Police testified that defendant was the driver. He turned onto the wrong side of a traffic divider/median at the entrance to Cambridge Meadows subdivision. Officer Morrison got a good look at defendant because they passed driver's side to driver's side. Defendant's truck "jumped the curb" and sped up when the marked police vehicle pursued with flashing lights. Officer Morrison had to drive about 50 miles per hour before he was able to catch defendant, about a quarter of a mile into the subdivision. Defendant failed some of the sobriety tests and refused a Breathalyzer. Later, his blood was drawn pursuant to a court order, and his blood alcohol level (BAC) was .17. The legal limit is .08.

Defendant testified that "Lisa" ran away after stopping the car in the subdivision. Defendant never saw Lisa again and had no way to contact her. However, he presented the testimony of three other witnesses. Wendy Larsen stated that she was living in a house in the Cambridge subdivision where defendant's company was remodeling the bathroom. On the night

-1-

in question, Ms. Larsen stated that she was driving in the subdivision and saw a police car stop defendant's truck. An unknown woman then ran from the driver's side. Upon seeing the police vehicle, Ms. Larsen crawled into the back seat of her car because she had been drinking and feared an OUIL. Officer Goolsby, who responded to Officer Morrison's radio call, found Ms. Larsen sleeping there and had trouble waking her. Scott Larsen, Wendy's ex-husband, testified that he "noticed Jay [defendant] drive by" at about 2:00 a.m. Scott Larsen then corrected himself to say, "Well, he wasn't driving, of course, because he was in the passenger seat." Scott Larsen did not see who was driving or see anyone get out of defendant's vehicle. Defendant's third witness, Cynthia Laslo, saw a police car "sitting in the wrong direction of the road," which forced Laslo to go a different way into the subdivision. This supported defendant's testimony about the positioning of the police car.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant raises three issues.[1] First, defendant claims that his trial counsel was ineffective because he referred to defendant's prior criminal record in voir dire, when questioning defendant on direct examination, and in closing argument. He also did not request a limiting instruction concerning evidence of prior crimes.

This issue was considered at a remand hearing by the circuit court judge who replaced the now-retired trial judge. At the remand hearing, trial counsel testified that he raised the issue of defendant's prior record to show that defendant was a "reformed man" who learned his lesson and no longer drove after drinking alcohol. Defendant gave testimony to this effect at trial. The court found no ineffective assistance of counsel under the tests of *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

The grant or denial of a motion for a new trial is reviewed for abuse of discretion. *People v Lemmon*, 456 Mich 625, 648 n 27; 576 NW2d 129 (2008). A new trial may be granted on any ground that would support reversal or because the verdict resulted in a miscarriage of justice, MCR 6.431(B), or when justice has not been done, MCL 770.1.

In this case, we agree that defendant failed to satisfy the two-prong test of *Strickland*. To prevail on a claim of ineffective assistance, the defendant must show that counsel's performance was defective and that the deficient performance was prejudicial and deprived the defendant of a fair trial. *Cullen v Pinholster*, 563 US ___, ___; 131 S Ct 1388, 1403; 179 L Ed 2d 557 (2011); *Strickland*, 466 US at 687; *People v Lloyd*, 459 Mich 433, 446; 590 NW2d 738 (1999). To show prejudice, the defendant must show that, but for counsel's error, there is a reasonable likelihood that the result would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The defendant must show that the result that occurred was fundamentally unfair or unreliable. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

---

[1] A fourth issue, involving $1,200 court costs for prosecuting defendant's case, was resolved in defendant's favor at a remand hearing.

We need not consider the first prong of the *Strickland* test because, even assuming that counsel's performance was deficient, defendant failed to show prejudice from counsel's alleged serious errors and deficient performance. Defendant's story was unbelievable for many reasons having nothing to do with his prior record. As the trial court found, the testimony of the defense witnesses was also "a far stretch," with one witness correcting himself after first saying he "saw Jay drive by," and another witness admitting driving after drinking and then climbing into the back seat to avoid being stopped for drunk driving. Defendant has not shown that he suffered prejudice within the meaning of *Strickland* because he cannot show that a different result was reasonably likely.

## III. SENTENCING

### A. *ALLEYNE* ISSUE

Next, defendant contends that the trial judge improperly engaged in fact-finding at sentencing and then sentenced defendant on facts not proven beyond a reasonable doubt. This issue is currently before the Michigan Supreme Court, which has granted leave in *People v Lockridge*, 304 Mich App 278; 849 NW2d 388 (2014), lv gtd 496 Mich 852 (2014), to consider: (1) whether the judge's determination of an appropriate sentencing guidelines range, MCL 777.1 *et seq.*, establishes a mandatory minimum such that facts used to score a sentencing variable must be established by a reasonable doubt or admitted by the defendant under *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2163; 186 L Ed 2d 314 (2013), and (2) if the judge's ability to depart downward from the guidelines for substantial and compelling reasons prevents the guidelines from being considered a mandatory minimum under *Alleyne*. In *Lockridge* and *People v Herron*, 303 Mich App 392, 403-404; 845 NW2d 533 (2013), our Court had distinguished *Alleyne* because judicial fact-finding under the guidelines was not used to establish a mandatory minimum floor but only to inform the judge's discretion within the statutory maximum and the jury's verdict. The defendant's application for leave to appeal in *Herron* was held in abeyance for the Supreme Court's decision in *Lockridge*. *People v Herron*, 846 NW2d 924 (2014).

Until *Lockridge* is decided, this Court must follow *Herron*, 303 Mich App at 403-404. Further, we agree with the reasoning in *Herron* and find Michigan's indeterminate sentencing scheme not constitutionally invalid. See also *People v McCuller*, 479 Mich 672, 676, 686-691; 739 NW2d 563 (2007); *People v Drohan*, 475 Mich 140, 164; 715 NW2d 778 (2006); *People v Armisted*, 295 Mich App 32, 53; 811 NW2d 47 (2007). *McCuller* held that a trial court did not err in basing sentencing on facts not admitted by the defendant or proven beyond a reasonable doubt, "unless the fact-finding increases the statutory maximum sentence to which the defendant had a legal right." *McCuller*, 479 Mich at 682. This did not occur in the present case, and we find resentencing not required on the basis of defendant's arguments.

### B. UNJUSTIFIED DEPARTURE

Next, defendant contends that the sentences of 78 to 120 months for OWI-3 and third-degree fleeing and eluding, represent a significant upward departure from the sentencing guidelines that was not justified by substantial and compelling reasons. This Court reviews for clear error the trial court's decision on whether a departure factor exists, reviews de novo

whether a factor is objective and verifiable, and reviews for abuse of discretion whether a reason for departure is substantial and compelling. *People v Hardy*, 494 Mich 430, 438 n 17; 835 NW2d 340 (2013); *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008); *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003). The substantial and compelling reasons must be based on objective and verifiable factors, that is, actions or occurrences external to the minds of those involved in the decision and capable of being confirmed. *People v Horn*, 279 Mich App 31, 43; 755 NW2d 212 (2008). The reasons for departure must also be of considerable worth and must keenly or irresistibly grab the court's attention. *Smith*, 482 Mich at 299; *People v Anderson*, 298 Mich App 178, 183; 825 NW2d 678 (2012).

In the case at bar, defendant's score on the sentencing guidelines fell in the D III cell for Class E offenses. His prior record variable (PRV) score was 30 and offense variable score (OV) was 25, as corrected at sentencing. The guidelines called for a minimum sentence of 10 to 46 months for a fourth habitual offender. MCL 777.66; MCL 777.21(3)(a) to (c). The maximum sentence for OWI-3 and third-degree fleeing and eluding, as a fourth habitual offender was life imprisonment.

Defendant's minimum sentences indeed represented a significant upward departure of 32 months from the guidelines' top figure. The trial judge's reasons for departure were (1) defendant committed perjury, (2) defendant brought in several witnesses to support his story, (3) defendant did not bring in the driver of the truck (apparently the person who drove defendant to the baseball game), although he was defendant's employee, (4) defendant brought another employee who testified that he saw defendant driving by, and then changed his testimony to say he saw defendant's truck but defendant was the passenger and not the driver, (5) defendant's testimony, that the vehicle, a truck with 36-inch wheels, was driven for work by other employees, was incredible because of the type of vehicle involved, (6) defendant drove in violation of license suspensions and would continue to do so unless incarcerated, and (7) before trial, defendant failed to pay the costs of his alcohol tether and then cut off the tether.

Of the above reasons, all but (5) and part of (6) are objectively verifiable. The judge's statement in reason (6)—that defendant would continue to drive with a suspended license unless incarcerated—was a legitimate inference based on defendant's past behavior. Defendant's driving record showed a large number of DWLS and OWLS offenses, and he had numerous drunk driving offenses dating back to 1994.

Further, we find that the judge's reasons for the departure were substantial and compelling and that the judge adequately justified the particular departure. Defendant's testimony, that he was not driving when stopped by police, was at odds with his former attorney's representations in his June 2013 motion to suppress and dismiss, and also with defendant's statements at a July 2013 plea hearing where defendant, attempting to secure a favorable sentence under a Cobbs arrangement, admitted driving the vehicle. Defendant did bring in three witnesses to support his version. Assuming he was the driver, it is reasonable to assume that he asked the witnesses to testify falsely for him. Finally, he did fail to pay for and then cut off his alcohol tether.

To support his argument that the sentences were not proportional to the crime, defendant cites two cases. In *Anderson*, 298 Mich App at 191, the defendant was given a 120-month

minimum sentence where the guideline range was 57 to 95 months. In upholding the sentence, this Court cited the defendant's planning, the victims' extreme physical and psychological injuries, the defendant's pattern of increasing violence toward the victims, and the defendant's failure to benefit from counseling. In *People v Read*, unpublished opinion per curiam of the Court of Appeals, issued May 10, 2011 (Docket No. 296540), in contrast, this Court found that the sentencing judge failed to justify a particular departure as required by *Smith*, 482 Mich at 303-304, and *Babcock*, where the defendant, convicted of burning real property, was sentenced to 40 to 120 months in prison despite a guideline recommendation of 0 to 9 months. The judge had considered the monetary and emotional cost to the owner, plus the fact that the defendant texted a picture of the burning house to his wife, who had rented the home and lived there with their child. The judge had also considered the defendant's background and lack of remorse. On appeal, the panel found that the judge failed to justify the particular departure. Although not required by *Smith*, the judge had also failed to place the defendant's sentence on the sentencing guidelines' grid.

We find *Anderson* more akin to this case than *Read*. The trial judge did sufficiently justify the particular departure. Several factors in this case were not accounted for by the sentencing guidelines. These were defendant's committing perjury and producing witnesses to support his false testimony, and defendant's extreme history of drunk driving, DWLS and OWLS, recidivism, and not being successful on probation. Perjury and suborning perjury are very serious matters. They (and the cutting off of an alcohol tether) show contempt and a disregard for the law and the court's authority. Further, defendant's behavior of continuing to drive while impaired by alcohol threatened many other people. Although defendant had previously served prison time for the same behavior, defendant was unwilling to accept the idea that he needed to change. The sentence was not disproportional to the offender or the offense, and the particular departure was sufficiently explained.

## IV. COURT COSTS

Defendant's third issue relates to the court's order that he pay court costs of $600.[2] Defendant argues that MCL 769.1k, as amended by 2014 PA 352, violated the Ex Post Facto Clause of the United States Constitution, art I, § 9. We disagree. Questions of statutory interpretation are issues of law, reviewed de novo. *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014); *People v Earl*, 495 Mich 33, 36; 845 NW2d 721 (2014).

We find that application of the 2014 amendment to MCL 769.1k to defendant did not violate the Ex Post Facto Clause. In *People v Cunningham*, 496 Mich at 149, 154, the Supreme Court held that MCL 769.1k(1)(b)(*ii*) did not provide lower courts with the independent authority to impose costs; courts could impose only those costs authorized by a separate statute. After *Cunningham* was released in June 2014, the Legislature amended MCL 769.1k(1)(b) to provide that the court could impose, until 36 months after the amendatory act, "[a]ny cost

---

[2] Defendant challenges the *authority* of the court to impose these costs, but does not challenge the *amount* of the costs imposed. In fact, at oral argument in this Court, defense counsel stated that a remand for a determination of the proper amount was unnecessary.

reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . ." MCL 769.1k(1)(b)(*iii*), amended by 2014 PA 352. Listed as included costs were those incurred by the court, including building operation and maintenance, salaries, and other expenses. This act was given immediate effect but applied to all fines, costs, and assessments ordered before June 8, 2014, the date *Cunningham* was released, and after October 17, 2014, the effective date of the amendment. The amendatory act specifically stated that it was a "curative measure that addresses authority of courts to impose costs under . . . MCL 769.1k, before the issuance of [*Cunningham*]." 2014 PA 352, enacting § 2.

In *People v Konopka (On Remand)*, ___ Mich App ___; ___ NW2d ___ (2015), slip op at 6-7), this Court held that imposition of court costs was valid under the amendment of MCL 769.1. Further, the Court rejected the penal versus procedural distinction argued by the instant defendant. *Id*., slip op at 15. The Court also held that the amendment was not ex post facto. Quoting *Earl*, 495 Mich at 37, this Court noted that the constitution bars retroactive application of a law if it "(1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence." *Konopka*, ___ Mich App at ___, slip op at 13. The Court held, however, that the amendment to MCL 769.1k(1)(b)(*iii*) did not increase the punishment for a crime; court costs were not punishment but rather were civil in nature. *Id*., slip op at 14. But even though the measure was intended as a civil remedy, with the non-punitive purpose of funding court operations, the inquiry must be made whether the statutory measure was "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.*, slip op at 14-15, quoting *Earl*, 495 Mich at 38.

## V. SUMMARY

For the reasons stated above, we reject defendant's arguments related to ineffective assistance of counsel, disproportionate sentencing and reliance on facts not proven at trial, and imposition of costs under MCL 769.1k(1)(b)(*iii*) as amended.

Affirmed.

/s/ David H. Sawyer
/s/ Pat M. Donofrio
/s/ Stephen L. Borrello